1  MUNGER, TOLLES & OLSON LLP
   GLENN POMERANTZ (SBN  112503)
2  TAMERLIN GODLEY (SBN  194507)
   MELINDA E. LEMOINE (SBN 235670)
3  SARALA V. NAGALA (SBN 258712)
   Glenn.Pomerantz@mto.com
4  Tamerlin.Godley@mto.com
   Melinda.LeMoine@mto.com
5  Sarala.Nagala@mto.com
   355 South Grand Avenue
6  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
7  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
8
   Attorneys for Defendant
9  WARNER MUSIC GROUP CORP.

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14

15  DEBRA SLEDGE, JOAN SLEDGE,          CASE NO.  12-CV-0559-RS
    KATHY SLEDGE LIGHTFOOT, KIM
16  SLEDGE ALLEN, jointly d/b/a "SISTER  **DEFENDANT WARNER MUSIC GROUP**
    SLEDGE," and RONEE BLAKLEY, on      **CORP.'S NOTICE OF MOTION AND**
    behalf of themselves and all others **MOTION TO DISMISS THIRD, FOURTH,**
17  similarly situated,                 **AND FIFTH CAUSES OF ACTION;**
                                        **MEMORANDUM OF POINTS AND**
18               Plaintiffs,            **AUTHORITIES IN SUPPORT THEREOF**

19  v.                                  Judge:      Hon. Richard Seeborg
                                        Date:       May 17, 2012
20  WARNER MUSIC GROUP CORP.,           Time:       1:30 pm
                                        Dept:       Courtroom 3, 17th Floor
21               Defendant.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION TO DISMISS</u>

## <u>THIRD, FOURTH AND FIFTH CAUSES OF ACTION</u>

PLEASE TAKE NOTICE that on May 17, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Judge Richard Seeborg in Courtroom 3 of the above-entitled Court, located on the 17th floor of 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Warner Music Group Corp. will move for an order dismissing the Third (Open Book Account), Fourth (Violation of California Unfair Competition Law) and Fifth (Violation of New York Unfair Competition Law) causes of action brought by Plaintiffs Debra Sledge, Joan Sledge, Kathy Sledge Lightfoot, Kim Sledge Allen, jointly d/b/a/ "Sister Sledge," and Ronee Blakley.

Dismissal of these causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6) is required because Plaintiffs cannot state claims for which relief may be granted. This Motion is based upon the Memorandum of Points and Authorities attached hereto; the declaration of Tamerlin J. Godley submitted herewith; the pleadings and records on file in this action; and such additional authority and argument as may be presented in any reply memorandum and any hearing on this Motion.

DATED: April 10, 2012

MUNGER, TOLLES & OLSON LLP
GLENN D. POMERANTZ
TAMERLIN J. GODLEY
MELINDA E. LEMOINE
SARALA V. NAGALA


By: /s/      *Tamerlin J. Godley*
TAMERLIN J. GODLEY

Attorneys for Defendant
Warner Music Group Corp.

17129107.1

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND .............................................................................................. 2

      A.   The Complaint................................................................................... 2

      B.   The Third, Fourth And Fifth Claims ................................................. 3

      C.   Plaintiffs' Contracts .......................................................................... 4

III.  ARGUMENT ................................................................................................... 6

      A.   Legal Standard Governing Motions To Dismiss................................ 6

      B.   Plaintiffs' Third Cause Of Action For An "Open Book Account" Fails To
           State A Claim ..................................................................................... 6

           1.   Sister Sledge's Contracts, And One of Blakley's Contracts, Are
                Governed By Enforceable Governing Law Provisions That
                Designate New York Law.......................................................... 7

           2.   New York Law Does Not Recognize A Claim For An Open
                Book Account ........................................................................... 8

           3.   Even Under California Law, The Open Book Account Claim
                Cannot Be Maintained ............................................................. 9

      C.   Plaintiffs' Fourth Cause Of Action For Violation Of California's UCL
           Must Be Dismissed .......................................................................... 10

           1.   The New York Choice of Law Clauses Also Prohibit Claims Under
                the UCL.................................................................................. 10

           2.   Even Under California Law, The UCL Claim Cannot Be Properly
                Pled........................................................................................ 11

      D.   Plaintiffs' Fifth Cause Of Action For Violation Of New York's Unfair
           Competition Law Must Be Dismissed .............................................. 16

           1.   The GBL Does Not Apply To Private Contract Disputes......................... 16

           2.   Plaintiffs Have Failed To Allege Deception Occurring In New York
                As Required............................................................................ 17

           3.   Plaintiffs Have Failed To Allege Any Of The Other Elements Of A
                GBL Claim ............................................................................. 18

IV.   CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ............................................................................................. 6

*Baldain v. Am. Home Mortg. Servicing, Inc.,*
2010 WL 56143 (E.D. Cal. Jan. 5, 2010) ............................................................... 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................. 6

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.,*
685 F. Supp. 2d 1094 (E.D. Cal. 2010) ................................................................. 12

*Care Environmental Corp. v. M2 Techs., Inc.,*
2006 WL 148913 (E.D.N.Y. Jan. 18, 2006) ........................................................... 8

*Conder v. Home Savings of Am.,*
680 F. Supp. 2d 1168 (C.D. Cal. 2010) ................................................................. 13

*Costello v. Bank of America Nat'l Trust & Sav. Ass'n,*
246 F.2d 807 (9th Cir. 1957) ................................................................................. 10

*Cusano v. Klein,*
2002 WL 34267920 (C.D. Cal. April 9, 2002) ........................................................ 8

*F.B.T. Productions, Inc. v. Aftermath Records,*
621 F.3d 958 (9th Cir. 2010) ................................................................................... 3

*Falcocchia v. Saxon Mortg., Inc.,*
709 F. Supp. 2d 873 (E.D. Cal. 2010) ................................................................... 14

*Fields v. Legacy Health Sys.,*
413 F.3d 943 (9th Cir. 2005) ................................................................................... 7

*Gavin v. AT&T Corp.,*
543 F. Supp. 2d 885 (N.D. Ill. 2008) ............................................................... 17, 18

*Harary v. Allstate Ins. Co.,*
983 F. Supp. 95 (E.D.N.Y. 1997) .......................................................................... 17

*In re Hydroxycut Marketing and Sales Practices Litig.,*
2010 WL 1734948 (S.D. Cal. April 26, 2010) ...................................................... 17

*In re Roberts Farms, Inc.,*
980 F.2d 1248 (9th Cir. 1992) ............................................................................... 10

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

**TABLE OF AUTHORITIES**
(continued)

Page

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................. 15

*KEMA, Inc. v. Koperwhats*,
   658 F. Supp. 2d 1022 (N.D. Cal. 2009) .................................................... 14

*Kirk v. Heppt*,
   532 F. Supp. 2d 586 (S.D.N.Y. 2008) ....................................................... 17

*Makaeff v. Trump University, LLC*,
   2011 WL 1872886 (S.D. Cal. May 16, 2011) ........................................... 17

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ....................................................................... 6

*Moss v. United States Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ....................................................................... 6

*Nat'l Rural Telecommunications Co-op v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................... 14

*Procter & Gamble Co. v. Quality King Distributors, Inc.*,
   974 F. Supp. 190 (E.D.N.Y. 1997) .......................................................... 17

*Ridenhour v. UMG Recordings, Inc.*,
   2012 WL 463960 (N.D. Cal. Feb. 13, 2012) ......................................... 8, 9

*Rivera v. BAC Home Loans Servicing, L.P.*,
   756 F. Supp. 2d 1193 (N.D. Cal. 2010) ...................................................... 2

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................................. 14

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009) ................................................................. 18, 19

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................. 13

*Wang & Wang LLP v. Banco Do Brasil, S.A.*,
   2007 WL 915232 (E.D. Cal. Mar. 26, 2007) ........................................... 13

*Williams v. Oberon Media, Inc.*,
   2010 WL 8453723 (C.D. Cal. April 19, 2010) ....................................... 18

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

**TABLE OF AUTHORITIES**
(continued)

Page

**STATE CASES**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone Co.,*
    20 Cal. 4th 163 (1999) ................................................................. 14

*Cooper v. New York Cent. Mut. Fire Ins. Co.,*
    900 N.Y.S.2d 545 (2010) ............................................................. 17

*Flax v. Lincoln Nat'l Life Ins. Co.,*
    864 N.Y.S.2d 559 (2008) ............................................................. 17

*Goshen v. Mutual Life Ins. Co. of New York,*
    98 N.Y.2d 314 (2002) ............................................................ 17, 18

*Lee v. De Forest,*
    22 Cal. App. 2d 351 (1937) ........................................................... 9

*Linear Tech. Corp. v. Applied Materials, Inc.,*
    152 Cal. App. 4th 115 (2007) ..................................................... 12

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459 (1992) ............................................................... 7, 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20 (1995) ............................................................. 16, 18

*Parker v. Shell Oil Co.,*
    29 Cal. 2d 503 (1946) ................................................................. 9

*Rosenbluth Int'l, Inc. v. Superior Court,*
    101 Cal. App. 4th 1073 (2002) ................................................... 12

*Teller v. Bill Hayes, Ltd.,*
    630 N.Y.S.2d 769 (1995) ............................................................. 17

*Waldman v. Englishtown Sportswear, Ltd.,*
    460 N.Y.S.2d 552 (1983) ............................................................... 9

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 ............................................... passim

Cal. Civ. Proc. Code § 337a ........................................................... 2

Fed. R. Civ. P. 9(b) ..................................................................... 15

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 6

4

New York Gen. Bus. Law § 349 ...................................................................... 2, 16, 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17129107.1

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Plaintiffs in this action are the musical group known as "Sister Sledge" and the separate

4  individual recording artist, Ronee Blakely (collectively "Plaintiffs").  They bring suit against

5  Warner Music Group Corp. ("WMG") claiming that WMG has improperly calculated the

6  royalties due them for certain digital music sales under the terms of their individual recording

7  contracts.  They purport to raise these claims on their own behalf and, as a putative class action,

8  on behalf of other similarly situated artists.  WMG will demonstrate at the proper time that class

9  certification is inappropriate here and will prove that WMG has not breached its contracts with

10 these Plaintiffs specifically.  At this initial point, however, Plaintiffs have alleged three claims—a

11 claim for an open book account under the California Code of Civil Procedure (Count Three);

12 violation of California's unfair competition law (Count Four) and violation of New York's unfair

13 competition law (Count Five)—which claims fail at the outset and must be dismissed.

14     First, Plaintiffs' open book account claim cannot be adequately pled.  All of Sister

15 Sledge's contracts, and one of Blakley's contracts, are governed by *New York* and not California

16 law.  New York law does not recognize a cause of action for an open book account and, thus, this

17 claim must be dismissed without further analysis as to Sister Sledge and as to the Blakley

18 recordings subject to her agreement governed by New York law.  Even if California law applied

19 to Sister Sledge, which it does not, and with respect to the Blakley contract that is governed by

20 California law, the claim still fails.  Under long-standing California precedent, an open book

21 account claim is not cognizable where there is a written contract governing the parties' rights and

22 obligations—plainly the circumstances here.

23     Second, Plaintiffs' claim for violation of California's unfair competition law, Cal. Bus. &

24 Prof. Code § 17200 ("UCL"), fails as well.  Again, the contractual New York choice of law

25 provisions bar the California UCL claim as to Sister Sledge and the Blakley recordings subject to

26 the agreement governed by New York law.  Where California law does apply, however, the claim

27 also cannot be maintained.  As parties to sophisticated and individualized recording contracts

28 with subsidiaries of WMG—not consumers, competitors or the general public—Plaintiffs are not

17129107.1

the type of parties that can recover from WMG or its subsidiaries for alleged violations of the UCL.  Plaintiffs also have not made allegations of offending conduct by WMG independent and separate from WMG's alleged breach of contract, notwithstanding that such allegations are required to maintain the claim.  Likewise, the Complaint does not allege any conduct by WMG that is "unfair, unlawful, or fraudulent" under the applicable standards as necessary to avoid dismissal.  Each of these deficiencies is fatal to the claim.

Third, Plaintiffs' claim for violation of New York's unfair competition law, Gen. Bus. Law § 349 ("GBL"), also falls on multiple grounds.  Like the UCL claim, Plaintiffs are not the type of parties that can recover under the law; a GBL claim can only be maintained by consumers or the general public.  Plaintiffs must also allege that they were deceived *in* New York (and not by a company based in New York).  Plaintiffs have not alleged any deception at all, let alone deception in New York.  Plaintiffs must further allege damages independent of the losses they claim they incurred as the result of any breach of contract, which they do not do.  The claim cannot stand on any of these independent bases.

Because Plaintiffs' Complaint does not, and cannot, adequately plead Claims Three, Four and Five, these claims should be dismissed without leave to amend.  *See Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) (if the complaint's deficiencies cannot be cured by amendment, dismissal with prejudice is appropriate).

## II.   BACKGROUND

### A.   The Complaint

Plaintiffs' Complaint alleges five causes of action:  (1) breach of contract (Complaint, ¶¶ 111-117); (2) declaratory judgment (*id.*, ¶¶ 118-121); (3) a claim for an open book account pursuant to California Code of Civil Procedure § 337a (*id.*, ¶¶ 122-127); (4) violation of California's UCL (*id.*, ¶¶ 128-134) and (5) violation of New York's GBL (*id.*, ¶¶ 135-140).

It is obvious from the very first paragraphs in the Complaint that Plaintiffs' suit is a royalty accounting breach of contract suit.  As the Complaint sets forth:

> Plaintiffs bring this [suit] . . . for [WMG's] failure to properly account to Plaintiffs and Class members for royalties stemming from . . . musical performances or recordings produced by them that

- 2 -

1

2

3

4

> were sold . . . through digital download and distribution. . . .
> Plaintiffs seek monetary damages, injunctive, and/or declaratory
> relief against [WMG] for its willful violation of contracts between
> itself and recording artists. . . . [WMG] has unilaterally breached
> these contracts by deciding to pay its recording artists and
> producers a fraction of the actual amount owed to them. . . .

Complaint, ¶¶ 1-2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

     Plaintiffs purport to base their claims on the Ninth Circuit's decision in *F.B.T. Productions, Inc. v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010) ("F.B.T.").  *See, e.g.,* Complaint, ¶¶ 10-12.  In F.B.T, the Ninth Circuit held that a different record company, Universal Music Group, had breached the specific recording contracts at issue in that case through its payment of royalties for music downloads and ringtones.  The court based its decision upon the particular language of the plaintiff's recording contracts, considering also the parties' performance thereunder.  *See, e.g.,* 621 F.3d at 964 (looking to the specific language of the contracts—"the agreements . . . provide that 'notwithstanding' the Records Sold provision, F.B.T. is to receive a 50% royalty on 'masters licensed'. . . .  The parties' use of the word 'notwithstanding' plainly indicates that even if a transaction arguably falls with the scope of the Records Sold provision, F.B.T. is to receive 50%. . . ."); *id.* at 967 (considering the issue of the parties' performance—"Aftermath cannot use F.B.T.'s lack of objection to payments [prior to completion of their audit] to prove how it interpreted the agreements" because Aftermath "immediately raised the issue . . . after the audit").

19

20

21

22

23

24

     With different contract terms and performance, Plaintiffs nevertheless want to convince this Court that WMG has breached its contracts with Sister Sledge, Blakley and other artists supposedly "similarly situated"—artists with contracts different from those in F.B.T (and different from one another)—by not paying such artists royalties for digital sales pursuant to the court's interpretation of the F.B.T. contracts.

25

    **B.**    **The Third, Fourth And Fifth Claims**

26

27

28

     More critical to this motion, however, Plaintiffs attempt to spin their royalty breach of contract claims into three other claims, all based on the same core breach of contract allegations, *without more*.  The open book account claim, for its part, attempts to collect the "outstanding

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

balance" allegedly due Plaintiffs because of WMG's purported improper royalty accounting for

digital sales:

> the outstanding balance owed by [WMG] to Plaintiffs . . . including a calculation of the amount of underpayment with respect to digital downloads, can be determined by examining all of the debits and credits recorded for each account.

Complaint, ¶ 127.

Likewise, the UCL claim is based upon WMG's purported "knowing breach" and

"conversion" to itself of monies allegedly due Plaintiffs:

> [WMG] has violated the [UCL by] knowingly breach[ing] its [agreements] with Plaintiffs. . . . [WMG] engaged in "unfair" business acts or practices by converting monies properly due Plaintiffs. . . .

*Id.*, ¶¶ 130-131.

Similarly, the GBL claim is based upon WMG's alleged contract breach and improper

accounting to Plaintiffs and nothing else:

> In breach of its recording contracts, as alleged herein, [WMG] has failed to properly account to Plaintiffs . . . the actual amount of royalties due from [WMG's] licensing contracts with Digital Content Providers. The royalties actually paid to Plaintiffs and others similarly situated are a small fraction of the amounts actually owed by [WMG].

*Id.*, ¶ 138.

## C.    **Plaintiffs' Contracts**

Plaintiffs refer repeatedly throughout their Complaint to so-called " Standard Recording

Agreements." Even a cursory look at Plaintiffs' contracts, however, reveals that this is a serious

misstatement. Recording contracts vary significantly between artists for a variety of reasons.[1]  By

way of example only, according to the Complaint the supposed key provision of the August 1,

1974 Sister Sledge recording agreement with Atlantic Recording Corporation (the "1974 Sister

Sledge Agreement") is the following provision (which the Complaint refers to as the "Masters

Licensed Provision"):

---

[1] One such reason is the fact that WMG today is a combination of many historically independent record labels.  The contracts at issue in this action are between the artists and various previously separate companies—The Elektra Records Co., Warner Bros. Records Inc. and Atlantic Recording Corporation.

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1

2

3

4

5

> Without limiting any of the other provisions of this Agreement, and in addition to all of COMPANY's rights hereunder, COMPANY shall have the right to license the masters, or any of them, to other parties (i) for phonograph record use on a flat-fee basis (as opposed to the royalty basis referred to in Paragraph 3 hereof) and (ii) for all other types of use (visual and nonvisual) on a flat-fee or royalty basis.  COMPANY shall credit ARTIST's royalty account with twenty-five (25%) percent of the net amount received by COMPANY under each such license.

6  Complaint, ¶ 67.

7          Plaintiffs point to an entirely different Masters Licensed Provision in the July 10, 1975

8  agreement between Blakley and Warner Bros. Records, Inc. (the "1975 Blakley Agreement"):

9

10

11

> As to (i) tape records manufactured and sold in the United States by licensees of Warner, and (ii) disc records and tape records manufactured and sold outside the United States and not covered in 5.B. 2. or 3. above, a royalty equal to fifty percent (50%) of [WMG's] net receipts for the licensing of masters hereunder. . . .

12  Complaint, ¶ 77.  There are no "standard" terms here.

13          Significant to this motion, the contracts also vary in their governing law provisions.  The

14  1974 Sister Sledge Agreement calls for the application of New York Law.  Declaration of

15  Tamerlin J. Godley ("Godley Decl."), Exh. A, ¶ 23 (the 1974 Sister Sledge Agreement) ("This

16  Agreement shall be deemed to have been made in the State of New York and its validity,

17  construction, performance and breach shall be governed by the laws of the State of New York

18  applicable to agreements made and to be wholly performed therein.").[2]  This agreement was

19  amended three times, without change to the governing law provision.  *Id.*, Exhs. B, C and D.  In

20  contrast, the 1975 Blakley Agreement calls for the application of California law.  Godley Decl.,

21  Exh. F (the 1975 Blakley Agreement), Additional Provisions, ¶ 6(d) ("This agreement shall be

22  construed in accordance with the laws of the State of California.").  Blakley has one other

23  agreement with The Elektra Records Co., now a subsidiary of WMG, which calls for the

24

25

26

27

28

[2] The contracts at issue in this suit are private contracts between WMG subsidiaries and the individual artists, which agreements reflect sensitive, proprietary and confidential information of the parties (including information like a party's social security number).  For this reason, WMG has submitted redacted copies of the recording contracts, which copies disclose only the terms of the contracts already public because they were quoted by Plaintiffs in the Complaint as well as the terms relevant to this motion.  To the extent the Court deems it important to see the full text of the contracts for this motion, the parties can meet and confer as how to best provide them to the Court at this juncture.

WARNER MUSIC GROUP CORP.'S MOTION TO DISMISS CLAIMS THREE, FOUR & FIVE (CASE NO. 12-CV-0559-RS)

17129107.1

application of New York law.  *Id*., Exh. E, The Small Print, ¶ 11(g) ("[t]he validity, construction and effect of this agreement, and any and all extensions and/or modifications thereof, shall be governed by the laws of the State of New York").  The agreements have a variety of other important differences, not relevant to this motion, and these differences will become readily apparent as the case proceeds.

## III.   ARGUMENT

### A.   Legal Standard Governing Motions To Dismiss.

A motion to dismiss should be granted if, accepting the facts alleged in the complaint to be true, such facts are insufficient to state a claim "upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The complaint must allege *facts* sufficient to state a claim; conclusory assertions are properly disregarded.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a motion to dismiss is properly granted unless the complaint alleges enough well-pleaded "facts to state a claim to relief that is plausible on its face."); *Moss v. United States Secret Serv.*, 572 F.3d 962, 968-72 (9th Cir. 2009) (to survive a Rule 12(b)(6) motion, the "non-conclusory 'factual content'" must be "plausibly suggestive of a claim entitling the plaintiff to relief"); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (any conclusory allegations are properly disregarded).

A court may not rely on material outside of the complaint when deciding a Rule 12(b)(6) motion *except* that a court may consider documents referred to in the complaint that are central to the plaintiff's claim when no party questions the authenticity of the copy attached to the 12(b)(6) motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Any such evidence, including a contract, may be treated as part of the complaint and its contents deemed "true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*

### B.   Plaintiffs' Third Cause Of Action For An "Open Book Account" Fails To State A Claim.

Plaintiffs' open book account claim fails on two grounds:  (1) Sister Sledge's contracts, and one of Blakley's contracts, call for the application of New York law, which does not recognize an open book account claim; and (2) even where California law applies, an open book account claim cannot stand when there is an existing written contract between the parties

1   governing their rights and obligations as is the case here.

2             **1.**      **Sister Sledge's Contracts, And One of Blakley's Contracts, Are**
3                     **Governed By Enforceable Governing Law Provisions That Designate New York Law.**

4        As noted above, Plaintiffs' recording contracts forming the basis for their claims in this

5   litigation contain choice of law provisions.  Sister Sledge's contracts explicitly choose New York

6   law to govern matters concerning "validity, construction, performance and breach."  *See, e.g.,*

7   Godley Decl., Ex. A ¶ 23.  One of Blakley's contracts is also governed by New York law.  *Id.*,

8   Exh. E, ¶ 11(g) (the "Blakley New York Law Agreement").

9        The parties' explicit choice of New York law dictates the law to be applied here as to all

10   the claims brought against Sister Sledge and as to the recordings covered by the Blakley New

11   York Law Agreement.  Federal courts look to the law of the forum state when analyzing the

12   application of a choice of law provision.  *Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th

13   Cir. 2005).  Under California law, a clause providing that a specified body of law "'governs' the

14   'agreement' between the parties, encompasses all causes of action arising from or related to that

15   agreement, regardless of how they are characterized."  *Nedlloyd Lines B.V. v. Superior Court*, 3

16   Cal. 4th 459, 470 (1992).  Thus, a choice of law provision applies not only to strict contractual

17   interpretation questions, but also more broadly to all causes of action "related to" the agreement,

18   including all of the claims alleged in Plaintiffs' Complaint.  *Id.* at 470.

19        Further, the New York choice of law provisions are enforceable.  As the California

20   Supreme Court has explained:  California (like many states and as set forth in the Restatement)

21   has a "strong policy favoring enforcement" of choice of law provisions.  *Id.* at 465.  In

22   determining whether a choice of law provision is enforceable under California law, there is a two

23   step process.  First, the party seeking enforcement of a choice of law provision (here WMG) must

24   show that either (1) the chosen state has a substantial relationship to the parties or their

25   transaction, or (2) there is another reasonable basis for the parties' choice of law.  *Id.* at 466.  If

26   either of these tests is met, the burden then shifts to the party seeking to avoid enforcement of the

27   provision (here Plaintiffs) to show that the chosen state's law is contrary to a "*fundamental* policy

28   of California;" if no such conflict exists, the court "shall enforce the parties' choice of law."  *Id.*

- 7 -

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1   (emphasis in original).

2        WMG's burden is readily met.  "If one of the parties resides in the chosen state, the parties

3   have a reasonable basis for their choice."  *See, e.g., Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d

4   1143, 1147 (9th Cir. 1986); *see also Nedlloyd*, 3 Cal. 4th at 467.  Here, the WMG subsidiaries

5   that are parties to the contracts at issue (Atlantic Recording Co. and The Elektra Records Co.) are

6   both headquartered in New York now and were located there at the time the contracts were

7   entered into, demonstrating a reasonable basis for choosing New York law.  *See* Godley Decl.,

8   Exh. A at 1 ("ATLANTIC RECORDING CORPORATION of 75 Rockefeller Plaza, New York

9   New York 10019") and Exh. E at 1 ("The Elektra Corporation[,] 15 Columbus Circle, New York

10  City, New York 10023").  WMG is also located in New York.  *See* Complaint, ¶ 22.

11       Once this foundational showing is met by WMG, Plaintiffs must show that application of

12  New York law in this case would offend a fundamental policy of California, which they cannot

13  do.  A court recently addressed this very issue in a breach of contract action involving recording

14  contracts brought against Universal Music Group.  *Ridenhour v. UMG Recordings, Inc.*, Nos. C

15  11-5321 SI, C 11-1613 SI, 2012 WL 463960 (N.D. Cal. Feb. 13, 2012).  The *Ridenhour* court

16  expressly held that New York Law was not contrary to any fundamental California policy in

17  regard to an open book account claim.  *Id.* at *3 ("plaintiff has not met his burden of showing that

18  application of New York law to plaintiff's open book account claim would violate a fundamental

19  policy of California").

20            **2.**    **New York Law Does Not Recognize A Claim For An Open Book Account**

21

22       Given that New York law applies to Sister Sledge and the Blakley New York Law

23  Agreement, this Court must examine whether a claim for open book account is cognizable under

24  New York law—which it is not.  Courts in both New York and California have recognized that

25  New York does not recognize a cause of action for "open book account."  *See Cusano v. Klein*,

26  No. CV 97-4914 AHM (Ex), 2002 WL 34267920, at *2 (C.D. Cal. Apr. 9, 2002) (finding no open

27  book account claim could be maintained in a royalty breach of contract action and stating:  "[i]n

28  short, New York does not recognize a cause of action for 'open book account'"); *Care*

17129107.1

1    *Environmental Corp. v. M2 Techs., Inc.*, No. CV-05-1600 (CPS), 2006 WL 148913, at *7

2    (E.D.N.Y. Jan. 18, 2006) (no claim for open book account exists in New York); *Waldman v.*

3    *Englishtown Sportswear, Ltd.*, 460 N.Y.S.2d 552, 556 (1983) ("The action on a book account is

4    purely statutory, and there is no New York statute authorizing such an action").

5          Because of this precedent, the *Ridenhour* court (discussed above)— after finding that the

6    recording contract's New York choice of law provision was enforceable— dismissed the

7    plaintiff's open book account claim without leave to amend. *Ridenhour*, 2012 WL 463960, at *4.

8    The same result is required here as to Sister Sledge and as to any recordings subject to the

9    Blakley New York Law Agreement.

           **3.      Even Under California Law, The Open Book Account Claim Cannot
10                   Be Maintained.**

11         Even if California law applied to Sister Sledge, which it does not, and with respect to the

12   Blakley agreement governed by California law, the claim still fails.  California courts have

13   routinely held that an open book account claim cannot be maintained where there exists a written

14   agreement between the parties governing their rights and obligations unless the parties agree

15   otherwise.  *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375,

16   1396 n.9 (2004) ("moneys due under an express contract cannot be recovered in an action on an

17   'open book account' in the absence of a contrary agreement between the parties"); *Tsemetzin v.*

18   *Coast Federal Savings and Loan Assoc.*, 57 Cal. App. 4th 1334, 1343 (1997) ("[i]t seems to be

19   well settled that monies which become due under an *express* contract . . . cannot, *in the absence*

20   *of a contrary agreement between the parties*, be treated as items under an open book account. . .

21   .") (emphasis in original); *Durkin v. Durkin*, 133 Cal. App. 2d 283, 290 (1955) (an open book

22   account is "usually disclosed by the account books of the owner of the demand, and does not

23   include express contracts or obligations which have been reduced in writing"); *Parker v. Shell Oil*

24   *Co.*, 29 Cal. 2d 503, 507 (1946) ("[s]ums which become due under an express contract . . . are not

25   . . . items of an open account"); *Lee v. De Forest*, 22 Cal. App. 2d 351, 360 (1937) (an express

26   contract defining the duties and liabilities of the parties is not "an open [book] account").

27         As the Ninth Circuit has explained:

28

                                                    - 9 -
WARNER MUSIC GROUP CORP.'S
                                                                 MOTION TO DISMISS CLAIMS THREE,
                                                                 FOUR & FIVE (CASE NO. 12-CV-0559-RS)

> The expression "outstanding and open account" has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced in writing. . . .

*Costello v. Bank of America Nat'l Trust & Sav. Ass'n*, 246 F.2d 807, 812 (9th Cir. 1957); *see also In re Roberts Farms, Inc.*, 980 F.2d 1248, 1253 n.3 (9th Cir. 1992) ( when "an express contract exists, courts require that the parties expressly intend to be bound [by an open book account] because accruing debts under an express contract are not normally considered the subject of an open book account"). This is particularly true where the contracts provide for the time and calculation of payment. *Id.*

Here, Plaintiffs are parties to express written contracts with subsidiaries of WMG governing the parties' rights and obligations, which contracts explicitly provide for royalty accountings to be calculated and provided to Plaintiffs on regular intervals. *See* Godley Decl., Ex. A, ¶ 8 (quarterly intervals in Sister Sledge contract); *id.*, Ex. F, "Exhibit A," ¶ (n) (biannual intervals in Blakley contract). Absent an agreement between WMG and Plaintiffs to treat their relationships as "open book accounts," which has not and cannot be pled, Plaintiffs cannot state an open book account claim under California law.

### C. Plaintiffs' Fourth Cause Of Action For Violation Of California's UCL Must Be Dismissed.

#### 1. The New York Choice of Law Clauses Also Prohibit Claims Under the UCL.

The New York choice of law provisions, discussed above, also doom the UCL claim as to Sister Sledge and recordings subject to the Blakely New York Law Agreement. Numerous courts have held that a UCL claim must be dismissed where there is a valid choice of law provision selecting another state's law. *See Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) ("A valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL"); *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (enforcing choice of law provision providing for New

- 10 -

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

Jersey law and dismissing UCL cause of action); *Melt Franchising, LLC v. PMI Enterprises, Inc.*, No. CV 08-4148 PSG (MANx), 2009 WL 32587, at *2 (C.D. Cal. Jan. 2, 2009) (dismissing UCL and other California claims where contract chose Massachusetts law). Once again, it is Plaintiffs' burden to establish that enforcing the parties' choice of New York law in regard to the UCL claim here violates a fundamental policy of California. The cases do not support this position. *See Cardonet, Inc. v. IBM Corp.*, No. C-06-06637 RMW, 2007 WL 518909, at *5 (N.D. Cal. Feb. 14, 2007) (holding that enforcement of New York choice-of-law provision would not contravene fundamental California policy related to UCL).[3] The claim must be dismissed as to Sister Sledge and the recording agreements subject to the Blakely New York Law Agreement on this ground alone.[4]

## 2.   Even Under California Law, The UCL Claim Cannot Be Properly Pled

### a.   The UCL Does Not Provide Relief To Contractual Counterparties.

Even where California law applies, Plaintiffs' Fourth Cause of Action is infirm. As a first point, Plaintiffs must show they are within the classes of litigants that the UCL seeks to protect: consumers, competitors and the general public. California courts have repeatedly held that claims by plaintiffs outside of these categories—in particular, claims by one contracting party against

---

[3] Some courts have found contravention of a fundamental California policy based upon predicate violations of the UCL not present here. For instance, in *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 900-902 (1998), the court held that California has a fundamental policy of prohibiting enforcement of noncompetition covenants, which weighed in favor of applying California law over a state law without such prohibitions where the UCL claim was based upon such noncompetition covenants. Those are not the circumstances here.

[4] Sister Sledge also has not pled facts sufficient to establish standing to raise a UCL claim. California law "embodies a presumption against the extraterritorial application of its statutes." *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000). With respect to the UCL specifically, "section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Id.* at 1126; *see also Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing UCL claims as to non-California plaintiffs where no California acts were alleged); *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-5815 CW, 2010 WL 3619884, at *8 (N.D. Cal. Sept. 10, 2010) (same); *Standfacts Credit Services, Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (dismissing with prejudice UCL claims brought by non-California plaintiffs). The Sister Sledge Plaintiffs all reside in states other than California. Complaint, ¶¶ 16-19. Further, the Complaint does not allege acts of unfair competition by WMG occurring in California. Thus, Sister Sledge has not pled facts sufficient to establish standing for the UCL claim.

17129107.1

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

another contracting party—do not implicate the UCL.  *See, e.g., Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (dismissing UCL claim and holding that a UCL action cannot stand where it is based upon a contract dispute between contractual counterparties that are not the general public or consumers); *Rosenbluth Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1077-78 (2002) (holding that "a UCL action based on a contract is not appropriate where the public in general is not harmed by the defendant's alleged unlawful practices").[5]

Plaintiffs do not, and cannot, allege that they are either competitors or consumers of WMG, or that they allegedly have been harmed as members of the general public.  Instead, they are parties to private commercial recording contracts with subsidiaries of WMG concerning royalty payments for music recordings.  *See* Complaint, ¶¶ 111-121.  Likewise, Plaintiffs' purported damages all spring from alleged breaches of the contracts they have maintained with subsidiaries of WMG for more than 35 years, not some alleged harm to the public at large.  *See, e.g., id.*, ¶¶ 2, 7, 14, 138.  Accordingly, Plaintiffs are not of the category of litigants who can maintain a UCL claim against WMG, requiring dismissal.

        **b.**       **Plaintiffs Have Not Alleged Conduct That Is Separate From And In Addition To The Alleged Breach Of Contract As Necessary To Maintain A UCL Claim.**

In order to withstand this motion to dismiss, Plaintiffs must also have alleged offending conduct that is *beyond the alleged contract breach itself.  See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (a simple breach of contract cannot violate the UCL unless "the act is unfair, unlawful, or fraudulent *for some additional reason*")

---

[5] One federal district court case frames the issue somewhat differently but comes to the same result.  In *In re Webkinz Antitrust Litigation*, 695 F. Supp. 2d 987, 998-999 (N.D. Cal. 2010), the defendants moved to dismiss the UCL claim on various grounds, including that the plaintiffs were contracting parties and not competitors or the public.  While noting that the contractual relationship of the parties was a factor, the court explained that "whether or not there is a contract for the plaintiffs to rely upon is secondary to the analysis of whether, as a result of the alleged unfair or fraudulent business practice, *consumers are adversely affected*." *Id.* at 999 (emphasis added).  Finding that the UCL claim pled "harm only to the Plaintiffs and Class members and alleges only that the conduct has a tendency to cause injury to their business interests under the contracts," the court held that the claim was invalid and dismissed the claim on this ground.  *Id.* Plaintiffs similarly have alleged only harm to themselves and not to the public, requiring dismissal.

17129107.1

(emphasis added).

For this reason, in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) the Ninth Circuit affirmed dismissal of the UCL claim to the extent it was based upon allegations of royalty contract breaches.  Specifically, in *Sybersound*, the plaintiff had alleged, among other contract breaches, that the defendants had violated the UCL by failing to pay proper royalties to third parties for use of recordings in karaoke records.  *Id.* at 1141.  The Court held that these allegations sounded in contract and, without separate allegations of independently wrongful conduct, the UCL claim could not be maintained.  *Id.* at 1152.  *See also Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV S-09-0931 LKK/GGH, 2010 WL 56143, at *7-*8 (E.D. Cal. Jan. 5, 2010) (dismissing UCL claim based on breach of contract where there were no independent allegations of unfairness, unlawfulness or fraud); *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (same); *Wang & Wang LLP v. Banco De Brasil, S.A.*, No. Civ. S-06-00761 DFL KJM, 2007 WL 915232, at *4 (E.D. Cal. Mar. 26, 2007) (same).

Here, the core of Plaintiffs' UCL claim is WMG's alleged breach of contract and nothing more:

> [WMG] has violated the [UCL by] knowingly breach[ing] its [agreements] with Plaintiffs. . . .  [WMG] engaged in "unfair" business acts or practices by converting monies properly due Plaintiffs. . . .

Complaint, ¶¶ 130-131.

A nearly identical allegation forms the nub of Plaintiffs' contract claims.  *See id.*, ¶ 115 (WMG "has materially breached its contractual obligations . . . by failing to properly account and provide adequate[] royalty compensation to Plaintiffs . . . with regard to licensing of master recordings").  Because the complaint alleges no additional facts beyond WMG's alleged breach of contract to support its UCL claim, the claim must be dismissed.

### c.    None Of The Conduct Alleged Is "Unlawful, Unfair or Fraudulent" As Required.

Plaintiffs have further failed to allege any conduct by WMG that rises to the level of "unlawful, unfair or fraudulent" as required to maintain a UCL claim.

<u>WMG's Alleged Conduct Is Not Unlawful</u>.  An "unlawful" business practice under the

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1    UCL is one that is "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

2    regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044

3    (9th Cir. 2010). As the Ninth Circuit made clear in *Shroyer*, a "common law violation such as

4    breach of contract is insufficient" to form the predicate "unlawful" act for a UCL violation. *Id.;*

5    *see also Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 873, 888 n.17 (E.D. Cal. 2010)

6    ("contract claims cannot constitute 'unlawful' conduct for purposes of an unfair competition

7    claim"); *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1033-34 (N.D. Cal. 2009) (dismissing

8    UCL claim under "unlawful" prong because no violation of law was alleged independent of the

9    alleged breach of contract); *Nat'l Rural Telecommunications Co-op v. DIRECTV, Inc.*, 319 F.

10   Supp. 2d 1059, 1074 (C.D. Cal. 2003) (same). Here, Plaintiffs do not mention any state, federal,

11   municipal, statutory, regulatory or court-made law that WMG allegedly violated—nor could

12   they—because WMG did not break any law. WMG's alleged breach of contract by purported

13   improper royalty accounting for digital sales does not meet the "unlawful" conduct necessary to

14   maintain a UCL claim.

15            WMG's Alleged Conduct Is Not Unfair. The cases diverge as to what constitutes "unfair"

16   conduct depending on the identity of the plaintiff. For cases between competitors, a plaintiff must

17   plead conduct "that threatens an incipient violation of an antitrust law, or violates the policy or

18   spirit of one of those laws because its effects are comparable to or are the same as a violation of

19   the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v.*

20   *L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999). For cases brought by consumers, it is

21   unsettled whether this standard applies or something different. *See Bardin v. DaimlerChrysler*

22   *Corp.*, 136 Cal. App. 4th 1255, 1264-1275 (2006). To the extent a different standard is applied to

23   consumers, courts have held that a practice is unfair when it "offends an established public policy

24   or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

25   consumers" and its injury to consumers outweighs any benefit. *Id.* at 1268 (quoting *Smith v. State*

26   *Farm Mutual Automobile Ins.*, 93 Cal. App. 4th 700, 718-719 (2001)). Breach of contract

27   allegations do not meet either standard. *See Boland,* 685 F. Supp. 2d at 1110.

28            Of course, Plaintiffs are neither consumers nor competitors, mooting the discussion of

- 14 -

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

1   which standard should apply and requiring dismissal as discussed in Section III.C.2.a, *supra*.  But

2   even if one or the other of these standards did apply, Plaintiffs' allegations do not meet them.

3   Plaintiffs' sole allegation as to unfairness resides in Paragraph 131:

4               [WMG] engaged in "unfair" business acts or practices by
                converting monies properly due Plaintiffs and the Class under the
5               express terms of the Standard Recordings Agreements.  [WMG's]
                misconduct offends public policy and is immoral, unscrupulous,
6               unethical, and offensive, and causes substantial injury to
                consumers."
7

8   Complaint, ¶ 131.  This conclusory allegation does not satisfy *Cel-Tech*'s requirement that

9   Plaintiffs allege conduct threatening an incipient violation of an antitrust law or significant harm

10  to competition.  Nor does it meet the requirement that the conduct be immoral, unethical and

11  cause injurious harm to consumers.  Indeed, the allegation relates only to WMG's alleged breach

12  of Plaintiffs' contracts and the harm it allegedly caused them individually and does not relate to

13  competition, antitrust or consumers at all.

14          <u>WMG's Conduct Is Not Fraudulent</u>.  Plaintiffs make just one allegation regarding fraud in

15  the Complaint, which is in their GBL cause of action.  *See* Complaint, ¶ 136 (WMG's "acts and

16  practices alleged herein constitute acts, uses, or employment by [WMG] and its agents of

17  deceptive practices, fraud, false promises, misrepresentations, or the knowing concealment,

18  suppression, or omission of material facts with the intent that others rely upon such concealment,

19  suppression, or omission, in connection with the sale of merchandise, and with the subsequent

20  performance. . . .").  This conclusory allegation is not supported by any factual allegations within

21  the Complaint and should be disregarded.  Further, fraud allegations necessary to meet the UCL

22  pleading requirements are subject to the heightened pleading standard of Federal Rule of Civil

23  Procedure 9(b) (requiring allegations of who committed the alleged fraud, what was said, when it

24  was communicated and how).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir.

25  2009) (dismissing UCL claim where fraud not plead with particularity); *Wang & Wang*, 2007 WL

26  915232, at *4 (same).  This pleading standard is not met in Plaintiffs' Complaint, which has no

27  specific factual allegations of fraud at all.

28          Without allegations of unlawful, unfair or fraudulent conduct, Plaintiffs' Fourth Cause of

- 15 -

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

Action for violation of California's UCL must be dismissed on this additional ground.[6]

### D. Plaintiffs' Fifth Cause Of Action For Violation Of New York's Unfair Competition Law Must Be Dismissed.

Plaintiffs' GBL claim is as defective as their UCL claim. Again, Plaintiffs fail to recognize that the GBL does not apply to private contractual disputes. Plaintiffs also do not plead, as required, any deceptive conduct that occurred *in New York* that was aimed at consumers or that caused damages beyond their individual breach of contract damages. Each of these failures dooms Plaintiffs' GBL claim.[7]

### 1. The GBL Does Not Apply To Private Contract Disputes.

The GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." General Business Law § 349(a); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995). The New York Court of Appeals made clear in *Oswego Laborers' Local 214* that the GBL excludes private contractual disputes. As the court explained: "[p]rivate contract disputes, unique to the parties, . . . would not fall within the ambit" of the GBL because they do not have a "broader impact on consumers at large." 85 N.Y.2d at 25. New York cases have enforced this rule strictly. For instance, one court has held:

> The statute was intended to empower consumers; to even the
> playing field in their disputes with better funded and superiorly
> situated fraudulent businesses. It was not intended to supplant an
> action to recover damages for breach of contract between parties to
> an arm's length contract. Indeed it has been observed: GBL §§

---

[6] In *James v. UMG Recordings*, Nos. C 11-1613 SI, C 11-2431 SI, 2011 WL 51592476, at *4-*6 (N.D. Cal. Nov. 1, 2011), another recording contract breach of contract action against Universal Music Group pending before Judge Illston like *Ridenhour, supra*, the court denied the motion to dismiss the UCL claim based on the allegations of that complaint. The *James* case did not involve New York choice of law as is the case for Sister Sledge and the Blakley New York Law Agreement so the issue regarding choice of law raised in this motion was not addressed by the court. Further, the complaint in that suit alleged allegations regarding consumer harm that are not present here. *Id*. at *5 (relying on allegations that the defendant had waged a "sustained public relations effort designed to convince the public that it had employed 'groundbreaking' and 'enlightened' accounting practices that actually benefitted (rather than cheated) the Class.").

[7] The GBL claim is also barred as to the recordings subject to the Blakley agreement with the California choice of law provision. *See Selevan v. Capital One Bank*, 164 F.3d 619, 1998 WL 681270, at *2 (2d Cir. 1998) (affirming district court judgment dismissing GBL claims that were barred by contractual choice of law clause).

349-350 should not be permitted to become an adjunct to ordinary commercial litigation, arbitrarily raising the stakes through their one-way attorney's fees provisions.

*Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 774 (1995) (internal quotation and citation omitted).

*See also Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 201

(E.D.N.Y. 1997) ("private contract disputes, unique to the parties, would not fall within" the

GBL); *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 98 (E.D.N.Y. 1997) (dismissing GBL claim

based on contract); *Cooper v. New York Cent. Mut. Fire Ins. Co.*, 900 N.Y.S.2d 545, 547-48

(2010) (same); *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008) (same); *Flax v. Lincoln

Nat'l Life Ins. Co.*, 864 N.Y.S.2d 559, 561 (2008) (same).

As a contractual dispute between Plaintiffs and WMG, Plaintiffs' claims simply do not

fall under the GBL.

### 2. Plaintiffs Have Failed To Allege Deception Occurring *In New York* As Required.

Plaintiffs alleging a violation of the GBL must establish that the deceptive act at issue

took place within the boundaries of the state of New York.  *See Goshen v. Mutual Life Ins. Co. of

New York*, 98 N.Y.2d 314, 324-25 (2002).  The statutory phrase "in this state" requires not only

that the deceptive act or scheme be invented or "hatched" in New York, but also that the

deception of the consumer itself must occur in New York in order to state a claim under § 349.

As the *Goshen* court noted, the law was intended to "protect consumers in their transactions that

take place in New York State," as opposed to "polic[ing] the out-of-state transactions of New

York companies," and thus the analysis does not turn on the residency of the defendant in the

litigation.  *Id.* at 325.

Consistent with this precedent, courts regularly dismiss GBL claims where there is no

factual allegation establishing that the plaintiff was deceived *in New York*.  *See Makaeff v. Trump

University, LLC*, No. 10cv0940-IEG (WVG), 2011 WL 1872886, at *2 (S.D. Cal. May 16, 2011)

(dismissing GBL claim where the plaintiffs were not deceived in New York, even though the

defendant conducted business there); *In re Hydroxycut Marketing and Sales Practices Litig.*, No.

09MD2087-BTM (AJB), 2010 WL 1734948, at *4-*5 (S.D. Cal. April 26, 2010) (same); *Gavin v.*

17129107.1

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

*AT&T Corp.*, 543 F. Supp. 2d 885, 907-08 (N.D. Ill. 2008) (dismissing GBL claim where defendant was headquartered in New York and conducted business there, including by entering into contracts and sending and receiving letters there, but no deception of plaintiffs was alleged in New York); *Williams v. Oberon Media, Inc.*, No. CV 09-8764-JFW (AGRx), 2010 WL 8453723, *5-*6 (C.D. Cal. April 19, 2010) (same).

Here, Plaintiffs all reside outside of New York and allege no deception in New York. Complaint, ¶¶ 16-21 (alleging Plaintiffs reside in Arizona, Pennsylvania and California). Although Plaintiffs allege that WMG is headquartered in New York, that fact is insufficient if Plaintiffs cannot allege that they were personally deceived within the state of New York. *See Goshen*, 98 N.Y.2d at 325; *Gavin*, 543 F. Supp. 2d at 907-08. The lack of any allegation of deception in New York is fatal to Plaintiffs' GBL claim.

### 3. Plaintiffs Have Failed To Allege Any Of The Other Elements Of A GBL Claim.

In addition to harm in New York, a plaintiff must allege: (a) that the defendants' actions were "consumer-oriented," such that they had a broad impact on consumers at large; (b) that the defendant engaged in a deceptive practice that was misleading of consumers in a material way; and (c) that the defendant's practice injured consumers or the public at large, independent of any alleged breach of contract damages suffered by the individual plaintiff. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Plaintiffs have not alleged any of these elements, and would have no basis to do so.

No Consumer-Oriented Conduct. Because the GBL is "directed at wrongs against the consuming public," the first element a plaintiff must plead is "[c]onsumer-oriented conduct." *Oswego Laborers' Local 214*, 85 N.Y.2d at 24-25. "Consumer-oriented conduct," in turn, is defined as "acts or practices [that] have a broader impact on consumers at large," as opposed to private contract disputes. *Id.*

Plaintiffs fail to allege any conduct at all affecting consumers at large. Their allegations are entirely focused on their own alleged losses. *See, e.g.,* Complaint, ¶ 138 (WMG "has failed to properly account *to Plaintiffs and other Class members* the actual amount of royalties due from

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)

[WMG's] licensing contracts with Digital Content Providers.  The royalties actually paid *to Plaintiffs and others similarly situated* are a small fraction of the amounts actually owed" by WMG); ¶ 139 (WMG's actions "directly, foreseeably, and proximately caused damages and injury *to Plaintiffs and the Class members*") (emphases added).  Nor does the rest of their Complaint demonstrate any consumer-oriented conduct by WMG.  The Plaintiffs feel that they are owed more under their contracts; this has nothing to do with consumers.

No Consumer Deception.  Without alleging consumer-oriented conduct, *ipso facto*, there cannot be any such conduct that is deceptive, nor have Plaintiffs alleged any.  As noted above, Plaintiffs' Complaint contains only a conclusory allegation that WMG's "acts and practices alleged herein constitute acts, uses, or employment by [WMG] and its agents of deceptive practices, fraud, false promises, misrepresentations. . . ."  Complaint, ¶ 136.  These conclusory allegations are insufficient to avoid dismissal even if they were in regard to consumer deception, which they are not.

No Injury To Consumers Separate From Plaintiffs' Contract Damages.  Finally, the "injury" element of a GBL claim must include losses that are "independent of the loss caused by the alleged breach of contract."  *See Spagnola*, 574 F.3d at 74.  Plaintiffs' losses here are solely breach of contract losses; the only injury alleged in the Complaint is improper royalty payments to Plaintiffs.  *See, e.g.,* Complaint, ¶ 2 (WMG has paid "its recording artists and producers a fraction of the actual amount owed to them for the licensing of master recordings to Digital Content Providers); *id.*, ¶ 7 (Warner "[f]ailed to properly account); *id.*, ¶ 14 ("[t]his action seeks the payment to artists of their 'rightful earnings.'"); ¶ 138 ("In breach of its recording contracts, as alleged herein, [WMG] has failed to properly account to Plaintiffs and other Class members. . . .).  Such injury is not cognizable under the GBL.

Each of these deficiencies requires dismissal of Plaintiffs' GBL claim.

1

## IV.      **CONCLUSION**

2       For all the foregoing reasons, Defendant WMG requests that the Court grant its motion to

3   dismiss Plaintiffs' Third, Fourth and Fifth Causes of Action with prejudice and without leave to

4   amend.

5
    DATED: April 10, 2012                          Munger, Tolles & Olson LLP
6

7
                                                   By:  /s/ *Tamerlin J. Godley*
8                                                        TAMERLIN J. GODLEY

9                                                  Attorneys for Defendant
                                                   WARNER MUSIC GROUP CORP.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17129107.1

WARNER MUSIC GROUP CORP.'S
MOTION TO DISMISS CLAIMS THREE,
FOUR & FIVE (CASE NO. 12-CV-0559-RS)