FILED

2012 JUN -1  P 5: 18

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBRA SLEDGE, JOAN SLEDGE, KATHY SELDGE LIGHTFOOT, KIM SLEDGE ALLEN, jointly d/b/a "SISTER SLEDGE," and RONEE BLAKLEY, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WARNER MUSIC GROUP CORP.,<br><br>Defendant.<br>_____/<br><br>AND RELATED CASES<br>_____/ | No. C 12-0559 RS<br>No. C 12-0870 RS<br>No. C 12-1531 RS<br>No. C 12-1611 RS<br>No. C 12-1790 RS<br><br>**ORDER APPOINTING INTERIM CO-LEAD CLASS COUNSEL AND CONSOLIDATING RELATED CASES** |

## I. INTRODUCTION

Plaintiffs in these five related, putative class actions allege Warner Music Group (WMG) failed to pay them adequate royalties for downloaded digital music and ringtones. After relation, rather than proceed with duplicative motion practice on the pleadings, litigation was stayed pending resolution of the instant motions (1) to appoint interim lead counsel for the putative class, and (2) to consolidate these related matters. The latter motion is unopposed, and for the reasons stated below, it will be granted. With respect to the motion to appoint class counsel, there are several competing proposals from plaintiffs' counsel (defendant takes no position). Upon consideration of the briefs, and the presentations made at the hearing, the Court appoints Pearson, Simon, Warshaw & Penny,

LLP, Lieff, Cabraser, Heimann & Bernstein LLP, Phillips, Erlewine & Given LLP, Hausfeld LLP, and Kiesel Boucher Larson LLP, as interim co-lead class counsel, and Bruce Simon as chairman.

## II. BACKGROUND

Plaintiffs in these related putative class actions[1] allege that WMG failed to account and pay them licensing royalties due on class members' musical performances or recordings sold by various digital music downloading, streaming, and ringtones services. On this basis, plaintiffs assert claims for breach of contract, and violations of California's and New York's Unfair Competition Laws, among other theories.

Plaintiffs in the first-filed *Sledge* action, joined by plaintiffs in *Johnston* and *Wright* (collectively, the *Sledge* cases), are represented by a consortium of attorneys from five plaintiff-side firms. They filed a motion for appointment as interim co-lead counsel on March 30, 2012. The *Sledge* plaintiffs propose that the five firms of Pearson, Simon, Warshaw & Penny, LLP, Lieff, Cabraser, Heimann & Bernstein LLP, Phillips, Erlewine & Given LLP, Hausfeld LLP, and Kiesel Boucher Larson LLP, all be appointed as interim co-lead class counsel, and that Bruce Simon of Pearson, Simon, Warshaw & Penny, LLP be appointed chairman of the group. Plaintiffs in *Castillo* ("the *Tower of Power* plaintiffs") are represented by a competing slate of attorneys from Audet & Partners LLP, Ram, Olson, Cereghino & Kopcyznski LLP, and the Law Offices of Lopez & Associates, who filed an opposition and "counter motion" requesting appointment as interim co-lead counsel. They propose appointment of William Audet of Audet & Partners LLP and Mr. Simon of Pearson, Simon, Warshaw & Penny, LLP as co-lead counsel, and an executive committee comprised of two attorneys from the *Sledge* group and two attorneys representing the *Tower of Power* plaintiffs. Finally, plaintiff's counsel in the last-filed *Risko* case requests the firm of Cafferty Faucher LLP be appointed interim co-lead counsel in the event the Court adopts a leadership structure other than those advanced by the *Sledge* and *Tower of Power* groups.

## III. DISCUSSION

---

[1] The related cases are: (1) *Sledge v. Warner Music Group Corp.*, No. 12-CV-0559-RS, (2) *Wright v. Warner Music Group Corp.*, No. 12-CV-870-RS, (3) *Castillo v. Warner Music Group Corp.*, No. 12-CV-1531-RS, (4) *Johnston v. Warner Music Group Corp.*, No. 12-CV-1611-RS, and (5) *Risko v. Warner Music Group Corp.*, Case No. 12-CV-1790-RS.

United States District Court
For the Northern District of California

A. Motion to appoint lead counsel

Plaintiffs in the *Sledge* action move for appointment as interim co-lead counsel, and plaintiffs in *Castillo* filed a brief styled as an opposition and "counter motion" for appointment. Counsel in *Risko* also move to be appointed. Under Rule 23(g)(3) of the Federal Rules of Civil Procedure, the district courts may "designate interim counsel to act on behalf of a putative class before determining whether to certify the actions as a class action." In so doing, the courts "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Additionally, the courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Such consideration may include the involvement of counsel in similar proceedings before other courts, or fee and expense arrangements related to the proposed appointment. MANUAL FOR COMPLEX LITIGATION (4th ed. 2004), § 10.221 (hereinafter MANUAL). Of course, the ultimate objective in appointing interim class counsel is to achieve the best possible result for the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602 (N.D. Cal. 2000); MANUAL, § 10.221.

As an initial matter, the appointments urged by all three of the various groups appear to pass muster under the factors enunciated by Rule 23(g)(1). Each group has devoted the resources necessary to lay the groundwork for this litigation by investigating the underlying facts and the applicable law, prior to filing suit on plaintiffs' various claims. Additionally, all of the competing firms appear to have the experience, personnel, and financial resources necessary to litigate a case of this size and complexity. While *Sledge, et al. v. Warner Music Group, Corp.*, the first-filed action, collectively involves the largest number of plaintiffs when the *Johnston* and *Wright* actions are added, those complaints are sufficiently similar that numbers alone are not dispositive. Although the parties debate who among them has the greatest stake in this litigation from the perspective of

damages, none has offered any estimates, and consequently, that question also cannot be determined with any certainty.[2]

All sides have provided extensive briefing and documentation concerning their respective experience and expertise handling class actions in general, and digital download cases in particular. Again, a review of these materials leads to the conclusion that each group is qualified to litigate these related actions. As it happens, both the *Sledge* and *Tower of Power* attorneys are already engaged in several matters in this District that closely resemble the cases at bar. Specifically, the five firms representing the *Sledge* plaintiffs are currently serving as interim co-lead class counsel in *Rick James v. UMG Recordings, Inc.*, No C 11-01613-SI, and related cases, and some of the firms representing *Sledge* are also handling *Martha Davis v. EMI Grp. Ltd.*, No. C 12-1602 MEJ. Audet & Partners LLP serves as counsel in *Beltran v. EMI Music, Inc.*, No. C 12-1002-YGR, along with Kiesel, Boucher, Larson LLP. Among these several cases, *Rick James* is by far the furthest along in litigation; motion practice has advanced beyond the pleadings, and the Court recently denied defendant's motion for summary judgment. The *Sledge* attorneys therefore persuasively argue they can litigate these cases most efficiently, drawing on the experience developed in those proceedings.

Turning to the other discretionary factors, the *Tower of Power* plaintiffs attack the proposal advanced by the *Sledge* group as "one sided" and "bloated." (Pls.' Opp'n, at 4). They argue that the *Sledge* consortium of attorneys has refused to stipulate to a "balanced" leadership structure that accommodates the interests of all plaintiffs. MANUAL, § 22.62 (when appointing counsel on Multi District Litigation matters, "[i]ncluding plaintiffs' attorneys with different perspectives and experience in lead or liaison counsel or as committee members can be helpful"). While "balance" is desirable as an abstract proposition, the *Tower of Power* plaintiffs have not identified any specific issues that might warrant a greater diversity of views from class counsel.[3]

---

[2] While the *Sledge* plaintiffs argue that they have suffered significant damages, and thus will be adequate representatives for the class, they do not offer any estimate of the harm they incurred. The *Tower of Power* litigants also have not provided any approximation of damages.

[3] The *Tower of Power* group also suggests that the *Sledge* attorneys could conceivably incur conflicts of interest by virtue of their involvement in other similar litigation. The same is theoretically true, however, of counsel representing the *Tower of Power* plaintiffs, given their participation in similar cases. In fact, no such actual conflicts have been identified.

Alternatively, counsel in *Tower of Power* submit that the *Sledge* proposal to appoint no less than five firms as co-lead counsel could lead to overstaffing. The *Tower of Power* group emphasizes that "while it may be appropriate and possibly even beneficial for several firms to divide the work among themselves, such an arrangement should be necessary, not simply the result of a bargain among the attorneys." MANUAL, §10.224. *See also id.* at § 10.221 ("The function of lead counsel may be divided among several attorneys, but the number should not be so large as to defeat the purpose of making such appointments."). In reply, counsel in *Sledge* submit the work will be appropriately divided, and urge that any staffing issues may be addressed if and when a motion for fees is brought. Of course, any fees petition will be carefully scrutinized, and it would be unwarranted to assume a risk of overbilling simply because five firms are sharing responsibility for the case. After all, appointed counsel have an ethical responsibility not to engage in wasteful and duplicative work. Furthermore, counsel in *Sledge* persuasively argued at the hearing that the allocation of responsibility among the five firms has proceeded smoothly in *Rick James* and that their group contains co-lead counsel that bring different strengths to the table, such as a particular expertise in the music industry. The *Sledge* group further represents that the structure they propose does not contemplate all five co-lead counsel being convened for all litigation decision making but rather duties will be parceled out so as to avoid waste and duplication.

Finally, the *Tower of Power* plaintiffs argue that it would be wrong for the court to accept, without modification, the *Sledge* proposal, because acceptance of such a "private ordering" is only appropriate when there is consensus among counsel as to the appointment of leadership. They urge that where the court entertains competing requests for appointment as lead counsel, it is preferable to appoint leadership that is fairly representative of the named plaintiffs. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006) (appointing representatives of competing groups to leadership). They are generally correct that the so-called "private ordering" approach is usually adopted where there is mutual agreement concerning the appointment of lead counsel, provided that judicial review determines the proposed counsel to be adequate. MANUAL, § 10.272. That said, if the *Sledge* parties' proposal appears to be the superior option from the putative class' perspective, nothing prohibits acceptance of it, even though the motion is contested. Indeed,

1  it would be contrary to the interest of the class to construct a leadership structure with members
2  from different groups for no reason other than to let all attorneys participate.
3  In sum, the competing counsel all appear to be sufficiently devoted, experienced,
4  knowledgeable, and resourceful, under Rule 23. Absent any other dispositive consideration,
5  however, the five firm consortia representing the *Sledge* plaintiffs is the best option owing to its
6  prior experience litigating the *Rick James* case. With the expectation that the putative class in these
7  related matters will benefit from that collective experience, that group of attorneys will be appointed
8  interim co-lead counsel.

B. Motion to consolidate

Plaintiffs Castillo and Kupka move to consolidate litigation in the related cases. Federal Rule of Civil Procedure 42(a) permits consolidation of matters that involve "a common question of law or fact." Fed. R. Civ. P. 42(a). The courts possess "broad discretion" to determine whether or not to grant a motion to consolidate. *Investors Research Co. v. U.S. Dist. Ct. for the S. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). None of the parties oppose consolidation, and all agree it will promote efficient adjudication.[4] As a result, the motion is granted. The parties are directed to meet and confer and to file a joint statement or stipulation addressing the desirability of proceeding on a single, consolidated complaint within 21 days of the date of this Order.

IV. CONCLUSION

The Court appoints Pearson, Simon, Warshaw & Penny, LLP, Lieff, Cabraser, Heimann & Bernstein LLP, Phillips, Erlewine & Given LLP, Hausfeld LLP, and Kiesel Boucher Larson LLP, as interim co-lead class counsel, and Bruce Simon as chairman of the group. The motion to consolidate is granted, and accordingly, the parties are directed to meet and confer as to the desirability of proceeding on the basis of a master complaint, and within 21 days of the date of this Order, to file a joint statement or stipulation addressing that issue.

IT IS SO ORDERED.

---

[4] Defendant, while consenting to consolidation, emphasizes differences between the cases which it believes disfavor class treatment. (Def.'s Resp. at 3-4).

No. C 12-0599 RS
ORDER

1  Dated: 6-1-12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE