```
 1                             PAGES 1-22

 2                   UNITED STATES DISTRICT COURT

 3                   NORTHERN DISTRICT OF CALIFORNIA

 4            BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

 5   IN RE: WARNER MUSIC GROUP           )
     CORP. DIGITAL DOWNLOADS             )
 6   LITIGATION                          )
                                         ) NO. C 12-559 RS
 7                                       )
                                         )  THURSDAY
 8                                       )  JANUARY 23, 2014
     _____ _____)  1:31 O'CLOCK P.M.
 9

10                   TRANSCRIPT OF PROCEEDINGS

11   APPEARANCES:

12   FOR PLAINTIFFS:           PEARSON SIMON & WARSHAW LLP
                               44 MONTGOMERY STREET
13                             SUITE 2450
                               SAN FRANCISCO, CALIFORNIA 94104
14                      BY:  BRUCE L. SIMON, ESQUIRE
     AND
15                             PEARSON SIMON & WARSHAW LLP
                               15165 VENTURA BLVD.
16                             SUITE 400
                               SHERMAN OAKS, CALIFORNIA 91403
17                      BY:   DANIEL L. WARSHAW, ESQUIRE

18   FURTHER APPEARANCES ON NEXT PAGE.

19

20   REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR

21

22

23

24

25
```

```
1    FURTHER APPEARANCES:

2    ALSO FOR PLAINTIFFS:

3    PHILLIPS, ERLEWINE & GIVEN, LLP

4    50 CALIFORNIA STREET

5    35TH FLOOR

6    SAN FRANCISCO, CALIFORNIA 94111

7    BY:  DAVID M. GIVEN, ESQUIRE

8    AND

9    HAUSFELD LLP

10   44 MONTGOMERY STREET

11   SUITE 3400

12   SAN FRANCISCO, CALIFORNIA 94104

13   BY:  ARTHUR N. BAILEY, JR., ESQUIRE

14

15   FOR DEFENDANTS:

16   MUNGER TOLLES & OLSON

17   355 S. GRAND AVENUE

18   35TH FLOOR

19   LOS ANGELES, CALIFORNIA 90071-1560

20   BY:  TAMERLIN J. GODLEY, ATTORNEY AT LAW

21

22

23

24

25
```

3

1    **JANUARY 23, 2014**                          **1:31 O'CLOCK  P.M.**

2

3                      **P R O C E E D I N G S**

4        THE CLERK:  C12-550, IN RE: WARNER MUSIC GROUP CORPORATION

5    DIGITAL DOWNLOADS LITIGATION.

6        COUNSEL, PLEASE COME FORWARD, AND STATE YOUR APPEARANCES.

7        MR. WARSHAW:  GOOD AFTERNOON.  DANIEL WARSHAW FOR

8    PLAINTIFFS AND THE CLASS.

9        THE COURT:  GOOD AFTERNOON, MR. WARSHAW.

10       MS. GODLEY:  GOOD AFTERNOON.  TAMERLIN GODLEY, MUNGER

11   TOLLES & OLSON FOR DEFENDANT WARNER MUSIC.

12       MR. SIMON:  GOOD AFTERNOON, YOUR HONOR.  BRUCE SIMON,

13   PEARSON ON BEHALF OF THE CLASS.

14       THE COURT:  GOOD AFTERNOON.

15       MR. BAILEY:  ARTHUR BAILEY, HAUSFELD LLP, ON BEHALF OF THE

16   CLASS.

17       THE COURT:  GOOD AFTERNOON.

18       MR. GIVEN:  DAVID GIVEN FOR THE PLAINTIFF AND CLASS.

19       THE COURT:  GOOD AFTERNOON.

20       THIS MATTER IS ON CALENDAR FOR A DETERMINATION ON

21   PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT.  AND AS WE

22   ALL KNOW, THE LODESTAR FOR ME ON THIS IS TO DETERMINE WHETHER

23   OR NOT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.  OR IF

24   IT APPEARS PRELIMINARILY TO BE SO, TO THEN WARRANT PRELIMINARY

25   APPROVAL.

1    I HAVE SOME QUESTIONS, AND I HAVE GONE THROUGH YOUR

2    MATERIALS.  I THINK RATHER THAN PERHAPS HAVING YOU SUMMARIZE

3    THE TERMS, AS I SAID I THINK I'M GENERALLY FAMILIAR WITH THEM

4    AND THE CIRCUMSTANCES OF THIS CASE.  SO PERHAPS THE BEST THING

5    FOR ME TO DO IS JUST TO POINT YOU TO THE PARTICULAR THINGS THAT

6    I WOULD LIKE TO HAVE CLARIFIED.

7        PERHAPS LET ME START JUST WITH AN UNDERSTANDING OF THE

8    AMOUNTS THAT IS PROPOSED TO BE AVAILABLE FOR DISTRIBUTION UPON

9    THE CLAIMS BEING MADE.

10       MY UNDERSTANDING IS IT'S A SETTLEMENT FUND OF ABOUT

11   $11 MILLION.  SOMETHING IN THAT --

12       MS. GODLEY:  ELEVEN, YOUR HONOR.

13       THE COURT:  ALL RIGHT.  AND THEN, THERE'S SOME REFERENCE

14   IN THE PAPERS TO -- I TAKE IT THIS IS THE OVERALL AMOUNT OF

15   REVENUE, IS IT, THAT IS ASCRIBABLE TO THESE DOWNLOADS AND RING

16   TONES OF 381 MILLION?  IS THAT -- I'M TRYING TO GET A HANDLE

17   ON -- LET ME JUST REPHRASE IT.

18       LET ME ASK THIS QUESTION:  I'M TRYING TO GET A SENSE OF IF

19   ALL 11 MILLION, 11.5 IS DISTRIBUTED -- AND THAT MEANS THERE'S

20   ENOUGH CLAIMS -- DO WE HAVE ANY SENSE OF WHAT THAT WILL MEAN IN

21   TERMS OF CENTS ON THE DOLLAR OF RECOVERY?  OR WHAT IS -- WHAT

22   DOES THIS MEAN?

23       MR. WARSHAW:  YOUR HONOR, DAN WARSHAW FOR THE PLAINTIFFS.

24       THERE IS A COUPLE OF DIFFERENT POINTS THAT WE MEASURED TO

25   ANSWER THIS QUESTION FOR YOU.  THE FIRST ONE IS WE ASKED THE

1   DEFENDANT TO RUN SOME NUMBERS AS IF THE ACTUAL -- SOME ACTUAL

2   CLASS MEMBERS MADE CLAIMS.  AND THERE'S TWO EXAMPLES.  I'M

3   GOING TO KEEP THEM ANONYMOUS FOR PRIVACY CONCERNS.  BUT FOR

4   APPROXIMATELY COMMERCE -- TOTAL COMMERCE WARNER RECEIVED --

5   WE'RE NOT TALKING ABOUT THE ROYALTY THAT THE ARTIST RECEIVED,

6   BUT THE ACTUAL MONEY THAT WARNER RECEIVED OF $340,000 AND

7   CHANGE IN THE CLASS MEMBER'S POCKET WOULD BE $7600.

8       A MORE GENERAL ANALYSIS, THOUGH, YOUR HONOR, WOULD BE THAT

9   FOR EVERY $50,000 OF GROSS REVENUE THE CLASS MEMBER RECEIVE AN

10  ADDITIONAL $1100.

11      SO FOR FIVE MILLION GROSS REVENUE IT WOULD BE $110,000.

12      THE COURT:  OKAY.

13      MR. WARSHAW:  THAT'S USING, OBVIOUSLY, ROUGH AVERAGES.

14      THE COURT:  OKAY.  SO IF -- DO WE HAVE ANY SENSE IF EVERY

15  ELIGIBLE CLASS MEMBER PUT IN A CLAIM, AND THE SETTLEMENT FUND

16  WAS THERE, WAS EXHAUSTED, IS THERE ANY WAY THAT WE CAN HAVE --

17  I KNOW IT WILL DEPEND, OBVIOUSLY.  PARTICULAR CLAIMANTS WILL

18  HAVE VERY DIFFERING POTENTIAL BASES FOR RECOVERY.  SO SOME WILL

19  PROBABLY BE ENTITLED TO A LOT MORE THAN OTHERS.  AND THAT WILL

20  BE PROPORTIONATELY REFLECTED, I TAKE IT.

21      DO WE HAVE SOME SENSE AT THE END OF THE DAY -- AGAIN, MY

22  QUESTION:  HOW MUCH WOULD A COMPLETE DISTRIBUTION OF THE

23  MONEY -- WHAT WOULD THAT MEAN FOR THE RECOVERY BY EACH

24  CLAIMANT?

25      MR. WARSHAW:  WELL, WE CAN'T GIVE YOU A NUMBER FOR EACH

1    CLAIMANT BECAUSE IT'S BASED UPON A PRO RATA SHARE OF --

2        THE COURT: WELL, EACH CLAIMANT --

3        MR. WARSHAW: -- COMMERCE.

4        THE COURT: IF ALL CLAIMANTS PUT IN A CLAIM THAT WOULD BE

5    ENTITLED TO RECOVER, AND THE FULL AMOUNT IS DISTRIBUTED,

6    UTILIZING SOMETHING LIKE CENTS ON THE DOLLAR, WHAT THE RECOVERY

7    WOULD BE FOR EACH OF THE CLAIMANTS. CAN WE COME TO SOME SENSE

8    OF THAT?

9        MR. WARSHAW: WELL IT'S A MATTER OF NOT CENTS ON THE

10   DOLLAR, YOUR HONOR, BECAUSE THE WAY WE CRAFTED THE SETTLEMENT

11   IS THAT WE'RE STILL USING THE RECORD-SOLD PROVISION. AND THE

12   DISPUTE IN THE CASE WAS WHETHER THE DIGITAL DOWNLOADS ARE A

13   RECORD OR A LICENSE.

14       THE COURT: YES.

15       MR. WARSHAW: SO THE CLASS MEMBERS HAVE ALREADY BEEN PAID

16   SOMETHING FOR THEIR DIGITAL DOWNLOADS. NOT LIKE THEY HAVEN'T

17   BEEN PAID AT ALL.

18       THE COURT: THEY ARE CLAIMING AS IF IT WAS SALES AND THEY

19   SHOULD BE PAID AS IF IT WAS A LICENSE.

20       MR. WARSHAW: CORRECT. IT'S ALMOST LIKE A WAGE AND HOUR

21   CASE, YOUR HONOR, WHERE SOMEONE IS ACTUALLY PAID STRAIGHT TIME

22   AND NO OVERTIME.

23       THE COURT: I UNDERSTAND.

24       MR. WARSHAW: SO THEY ALREADY GOT THEIR STRAIGHT TIME. SO

25   THIS IS THE OVERTIME.

```
1        THE COURT:  I UNDERSTAND.

2        MR. WARSHAW:  OKAY.  SO EACH CONTRACT HAS A DIFFERENT

3   PERCENTAGE THAT THE CLASS MEMBER GETS.  SOME WERE AS LOW AS

4   FIVE PERCENT.  AND FOR ARTISTS WITH A LOT OF BARGAINING POWER

5   THEY ARE VERY HIGH.

6        SO IT'S VERY DIFFICULT TO ANSWER THE COURT'S QUESTION

7   BECAUSE OF THE VARIANCE IN PERCENTAGE THEY GET AND THE AMOUNT

8   OF SALES THAT THEY HAVE ENJOYED DURING THE CLASS PERIOD.

9        SOME ARTISTS HAVE HAD NO SALES.  SOME ARTISTS HAVE HAD

10  NUMBER ONE HITS.  BUT THOSE ARTISTS, OF COURSE, ARE PROBABLY

11  OUTSIDE OF THE CLASS.

12       THE COURT:  I GUESS WHAT I AM WRESTLING WITH IS JUST --

13  I'M HAVING A HARD TIME -- AND IT MAY BE A VERY RICH SETTLEMENT

14  FOR YOUR CLIENTS.  BUT I'M HAVING A HARD TIME UNDERSTANDING

15  WHAT THAT FIGURE MEANS.

16       YOU KNOW, THE 11.5 MILLION SOUNDS LIKE A LOT OF MONEY TO

17  ME, BUT I DON'T HAVE -- I DON'T HAVE THE BENCHMARK AGAINST

18  WHICH TO REALLY ASSESS WHAT KIND OF RECOVERY THAT IS LIKELY TO

19  BE.

20       MR. WARSHAW:  IT'S ANOTHER AVERAGE NUMBER THAT WE RAN,

21  YOUR HONOR.  IT'S CLOSE TO A 3 PERCENT ROYALTY UP TICK.

22       THE COURT:  OKAY.

23       MR. WARSHAW:  SO FOR THE ROYALTIES THEY RECEIVED ALREADY

24  BY WARNER DURING THE CLASS PERIOD, AND IF ALL OF THOSE

25  SETTLEMENT FUNDS ARE DISTRIBUTED TO THE CLASS AND EVERYONE
```

1   MAKES A CLAIM, ON AVERAGE THEY ARE GETTING THREE PERCENT.

2        THE COURT:  OKAY.  OKAY.

3        MR. WARSHAW:  I HOPE THAT ANSWERS YOUR QUESTION.

4        THE COURT:  IT'S GETTING ME THERE.

5        MR. WARSHAW:  OKAY.

6        THE COURT:  LET ME TELL YOU MY BIGGEST ISSUE, AND MAYBE

7   THERE'S A QUICK ANSWER TO THIS.  FOR THE GOING FORWARD REMEDY,

8   A CLASS MEMBER, PUTATIVE CLASS MEMBER WHO DOES NOT PROVIDE A

9   CLAIM, AS I UNDERSTAND IT, THE WAY THIS AGREEMENT OPERATES WILL

10  NOT GET THE BENEFIT OF THE GOING FORWARD ADJUSTMENT; THAT ONLY

11  THOSE WHOSE PROVIDE A CLAIM.

12       AT THE SAME TIME, THOSE SAME PUTATIVE CLASS MEMBERS ARE

13  RELEASING CLAIMS.  THAT'S THE NATURE OF THIS ARRANGEMENT.

14       AND I UNDERSTAND WHY WE'RE PAST RECOVERY.  YOU'VE GOT TO

15  PUT IN A CLAIM, BECAUSE YOU ARE NOT -- YOU KNOW, DEFENDANTS

16  CAN'T PAY OUT JUST WILLY-NILLY TO EVERYBODY.  THEY HAVE TO HAVE

17  A SPECIFIC CLAIM.

18       BUT WHAT I AM CONCERNED ABOUT IS WHY SHOULD PUTATIVE CLASS

19  MEMBERS WHO DO NOT MAKE A CLAIM, WHY SHOULD THEY BE RELEASING

20  ANYTHING?

21       AND THAT'S ON A PERSPECTIVE BASIS, AND THAT'S WHAT I'M

22  TROUBLED BY.

23       GO AHEAD.

24       MR. WARSHAW:  YOUR HONOR, THAT'S OBVIOUSLY A NEGOTIATED

25  POINT IN SEVERAL OF THE MEDIATIONS WE HAD WITH JUDGE WEINSTEIN,

1    AND IT'S SOMETHING WARNER REQUIRED TO MAKE THE DEAL.  THEY NEED

2    PEACE.

3         THE REASON THAT THE CLAIM IS NECESSARY FOR THE PROSPECTIVE

4    RELIEF -- AND THIS IS A POINT THAT WE WENT AROUND AND AROUND

5    WITH -- IS THAT -- AND MS. GODLEY CAN SPEAK TO THIS MORE THAN I

6    CAN.

7         THE PROCESS BY WHICH WARNER HAS TO ADJUST A ROYALTY

8    ACCOUNT IS NOT JUST SIMPLY SAYING:

9              "BAND X GETS A 2.5 PERCENT BUMP."

10        IT ACTUALLY IS A VERY TIME-CONSUMING PROCESS REQUIRING THE

11   ROYALTY DEPARTMENT AND SOMEONE IN LEGAL TO PULL THE CONTRACT,

12   REVIEW THE CONTRACT.  AND THERE'S SIGNIFICANT RESOURCES AT PLAY

13   TO MAKE THAT ADJUSTMENT.

14        SO WARNER WAS UNWILLING TO MAKE THAT ADJUSTMENT FOR FOLKS

15   WHO HAVE SUCH A SMALL AMOUNT OF DIGITAL DOWNLOADS.

16        THE COURT:  OKAY.  BUT WHY SHOULD THEY RELEASE CLAIMS

17   GOING FORWARD?

18        MS. GODLEY:  YOUR HONOR, IF I CAN --

19        THE COURT:  WHY CAN'T THEY THEN -- THEN IF THEY WANT TO

20   BRING AN ACTION ON GOING FORWARD BASIS, YOU KNOW, TO -- THIS

21   NOTION OF PULLING CONTRACTS AND THE LIKE, AND IT'S BURDENSOME,

22   AND ALL THE REST IS FINE.  BUT I DON'T SEE WHY YOU SHOULD GET

23   THE BENEFIT OF IT.

24        MS. GODLEY:  YOUR HONOR, IT'S IMPORTANT THAT WE'RE BUYING

25   PEACE HERE ON THIS ISSUE ACROSS THE BOARD.

1          THE COURT:  WELL, YOU'RE BUYING PEACE, BUT YOU'RE  -- I

2     UNDERSTAND WHY YOU WANT TO BUY PEACE.  I AM NOT GOING TO

3     DISAGREE WITH YOU THAT THAT'S WHAT YOU WOULD LIKE.  BUT WHY

4     SHOULD YOU GET PEOPLE TO RELEASE THEIR CLAIMS GOING FORWARD,

5     YOU KNOW?  AND THEY ARE GETTING NOTHING.  THEY ARE GETTING

6     ZERO.

7          MS. GODLEY:  THAT'S A VERY GOOD QUESTION, YOUR HONOR.  LET

8     ME JUST STEP BACK.

9          SO THERE ARE ABOUT 12,000 PLUS FOLKS WHO GET ROYALTY

10    PAYMENTS FROM WARNER MUSIC GROUP.  BUT WHEN WE LOOK AT THE

11    DOWNLOAD REVENUE FROM INCEPTION OF DOWNLOADS TO -- WE LOOKED AT

12    IT THROUGH WHEN THE COMPLAINT WAS FILED, FEBRUARY OF 2012 --

13    THERE'S ABOUT 500 ARTISTS OF THOSE 12,000 THAT ARE 90 PERCENT

14    OF THE DOWNLOAD REVENUE.

15         AND SO THE NUMBER OF FOLKS THAT ACTUALLY ARE MAKING MONEY

16    FROM THEIR DOWNLOADS STILL IS A SMALL NUMBER.  AND OF THOSE

17    500, A SMALL PERCENTAGE ARE IN THE CLASS.

18         SO WE BELIEVE THAT PEOPLE WHO HAVE A REVENUE STREAM THAT

19    CARE ABOUT THEIR ROYALTIES SHOULD -- AND THEY WILL LOOK AT

20    THIS.  THEY WILL MAY THEIR CLAIM.  AND THEN, WE CAN GO THROUGH

21    AND DO ALL THE WORK THAT WE NEED TO DO TO MAKE THOSE

22    ADJUSTMENTS.

23         THE COURT:  BUT DOESN'T THAT CUT THE OTHER WAY?  I MEAN,

24    YOU'RE SAYING:

25              "THESE ARE PEOPLE -- WE'RE GOING TO TAKE CARE OF ALL

1       THOSE WHO REALLY HAVE SOMETHING TO GAIN OUT OF THIS."

2       WELL, THEN, THE OTHER PEOPLE, THEY ARE NOT -- UNDER YOUR

3   THEORY THEY ARE NOT GOING TO BE MOTIVATED TO MAKE A CLAIM.  BUT

4   MAYBE THERE ARE A COUPLE OF THEM OUT THERE THAT YOU ARE GOING

5   TO MISS IN THE MIX HERE.  AND I DON'T SEE WHY THEY SHOULD BE

6   DISENFRANCHISED OUT OF THEIR RIGHTS GOING FORWARD.

7       AS I SAY, I UNDERSTAND WHY YOU HAVE TO STEP UP TO THE

8   PLATE AND MAKE YOUR CLAIM FOR PAST DAMAGES.  THAT MAKES SENSE

9   TO ME.

10      BUT PROSPECTIVELY TO HAVE PEOPLE WHO AREN'T FILING CLAIMS

11  RELEASING RIGHTS GOING FORWARD STRIKES ME AS TROUBLING.

12      MS. GODLEY:  WELL, YOUR HONOR, IT'S REALLY IMPORTANT FOR

13  US, AS I EXPLAINED THAT.  WE WANT TO MAKE SURE THIS IS -- IF

14  THIS IS AN ISSUE FOR SOMEONE, WE DON'T -- SOMEONE CAN COME UP,

15  BRING IT UP IN THE AUDIT.

16      THE REAL VALUE TO US, BECAUSE WE FEEL VERY STRONGLY THAT

17  WE HAVE A VERY STRONG CASE ON -- THE CLASS CERT WOULD BE

18  DIFFICULT TO GET.  WE FEEL WE HAVE A VERY STRONG CASE ON THE

19  MERITS.  SO THE REAL VALUE --

20      THE COURT:  WELL, THEN, THE AUDIT IS -- THAT AUDIT REMEDY

21  IS COMPLETELY ILLUSORY, BECAUSE YOU ARE GOING TO SAY:

22          "YOU CAN AUDIT ALL YOU WANT, BUT WE DON'T AGREE

23      YOU'RE ENTITLED TO THAT."

24      MS. GODLEY:  WELL, IF IT'S NOT RELEASED, THEN WE WILL HAVE

25  TO DEAL WITH THIS ISSUE AS, YOU KNOW, ANY NUMBER OF THESE

1   PEOPLE WHO DIDN'T BOTHER TO FILE A CLAIM CAN COME FORWARD AND

2   SAY:

3              "WE HAVEN'T FILED.  WE MIGHT AS WELL GO AHEAD AND TRY

4       THIS CASE."  AND THEN, WE WILL HAVE PEACE, BECAUSE WE WILL

5   HAVE RES JUDICATA ON THE ISSUE, AND NOBODY CAN RAISE IT AGAIN.

6       BUT THE POINT OF THIS IS TO MAKE SURE THIS ISSUE IS BEHIND

7   US.  IT'S A WIN-WIN.  THE ARTISTS ARE ABLE TO HAVE THE BENEFIT

8   AND WITHOUT YEARS AND YEARS OF LITIGATION.

9       BUT UNLESS WE'RE ABLE TO BUY PEACE, WHICH IS THE REAL

10  VALUE HERE, THEN IT'S HARD TO SEE WHY WE ARE GOING TO GO

11  FORWARD AND DO IT.

12      AND IT NEEDS TO BE PEACE ACROSS THE BOARD, BECAUSE ANY

13  NUMBER OF PEOPLE COULD RISE UP.  WITH 12,000, ANY NUMBER COULD

14  RISE UP.  AND THAT'S COSTLY.  EVEN IF PEOPLE HAVE NO CLAIMS,

15  THEY CAN RISE UP.  AND THEN, THAT COSTS US A LOT IN ATTORNEY'S

16  FEES AND THE LIKE.

17      THE COURT:  WELL, OKAY.  BUT I STILL -- THEN GOING BACK TO

18  THIS INITIAL POINT OF:  WHY IT IS SO DIFFICULT GOING FORWARD

19  FOR YOU TO MAKE ADJUSTMENTS FOR CLASS MEMBERS WHO DON'T FILE A

20  CLAIM.  SO I'M NOT FOLLOWING YOU ON WHY THAT'S SO --

21      MS. GODLEY:  THERE'S ABOUT 12,000.  AND WE HAVE --

22      THE COURT:  ALL RIGHT.

23      MS. GODLEY:  -- SAID IT WOULD TAKE ABOUT A YEAR --

24      THE COURT:  OKAY.

25      MS. GODLEY:  -- OF A REAL PERSON'S TIME TO GO THROUGH,

1   FIND THE CONTRACT, FIGURE OUT -- A LOT OF PEOPLE HAVE MULTIPLE

2   CONTRACTS.  AND TO MAKE THE ADJUSTMENT WITH NO REAL BENEFIT.

3       AT THE END OF THE DAY, THEY DON'T REALLY HAVE MEANINGFUL

4   DOWNLOAD SALES.  AND SO WE SAY:

5           "OKAY.  WE'RE JUST GOING TO DO THIS ACROSS THE BOARD.

6       THAT IS A YEAR.  THAT IS MONEY THAT'S COMING OUT OF THE

7       POT TO TRY AND ADMINISTER THIS SETTLEMENT."

8       SO TO COME UP WITH A RIGHT BALANCE OF WHAT IT'S GOING TO

9   COST TO ADMINISTER, MAKE SURE PEOPLE WHO HAVE REAL STREAMS ARE

10  PROTECTED.

11      THIS IS THE BALANCE THAT WE CAME UP WITH:  THAT YOU FILE

12  THE CLAIM, AND THEN THAT WORK WILL BE DONE.  YOU'LL HAVE THE

13  BENEFIT GOING FORWARD.  YOU'LL GET THE PAYMENT GOING BACKWARD.

14      BUT A YEAR OF ROYALTY TIME TO GO THROUGH IT IS QUITE

15  EXPENSIVE TO DO.  AND THE ROYALTY PROCESS IS QUITE EXPENSIVE.

16      THE COURT:  WELL, I'LL GO ON TO SOME OTHER ISSUES.

17      MY PRACTICE IS THAT WHILE THE STANDARD FOR PRELIMINARY

18  APPROVAL IS CERTAINLY DIFFERENT THAN FOR FINAL APPROVAL, AND I

19  OFTEN GET THE ARGUMENT:

20          "WELL, YOU KNOW, THERE'S SOME ISSUES OUT THERE, AND

21      MAYBE WE'LL ALL HASH THEM OUT.  BUT CERTAINLY WE HAVE

22      ENOUGH FOR PRELIMINARY APPROVAL."

23      THE DANGER WITH THAT IN MY MIND IS IF I REALLY HAVE A

24  SERIOUS CONCERN I DON'T THINK IT'S FAIR NOR THE PROPER WAY TO

25  GO TO HAVE A LOT OF EXPENSE AND EFFORT GO INTO IT, AND THEN IF

1    I THINK ON FINAL APPROVAL I MAY WELL SAY "NO," I WANT YOU TO

2    KNOW THAT NOW.  AND THIS IS ONE OF THOSE ISSUES.

3        YOU SHOULD KNOW THAT I DON'T THINK -- I APPRECIATE THE

4    EXPLANATION YOU'VE GIVEN ME, BUT I HAVE SOME TROUBLE WITH IT.

5    AND I REALLY -- IT IS THE ASPECT OF THIS PROPOSED DISPOSITION

6    THAT I LET YOU DEVELOP THE ARGUMENTS FURTHER, AND I'LL GIVE IT

7    A LOOK, ASSUMING PRELIMINARY APPROVAL.  BUT YOU'RE FOREWARNED

8    THAT IT'S AN ISSUE FOR ME SO....

9        OKAY.  LET ME GO ON WITH SOME OF THE OTHER QUESTIONS THAT

10   I HAVE.  YOU INDICATED IN TERMS OF THE ATTORNEY'S FEE PETITION

11   THAT THAT WILL BE AVAILABLE FOR REVIEW UNDER YOUR PROPOSAL

12   WITHIN TIME FOR REVIEW AND OBJECTION.

13       MR. WARSHAW:  CORRECT.  IT WILL TAKE PLACE PRIOR TO THE

14   DEADLINE TO FILE OBJECTION UNDER IN RE:  MERCURY.

15       THE COURT:  OKAY.  THIS IS A FAIRLY SMALL MATTER, BUT THE

16   INCENTIVE PAYMENTS THAT YOU'RE PROPOSING, WHICH I THINK IS

17   WHAT, $10,000 OR SOMETHING?

18       MR. WARSHAW:  YES, YOUR HONOR.

19       THE COURT:  WE -- AS YOU PROBABLY KNOW, WE HAD SOME RECENT

20   NINTH CIRCUIT LAW THAT TALKED ABOUT -- IT WAS IN THE CONTEXT OF

21   SOMETHING THAT DOESN'T APPLY HERE, BUT IN WHICH THE COURT HAD

22   SERIOUS PROBLEMS WITH THE CLASS REPRESENTATIVES AND POTENTIAL

23   CONFLICTS.

24       BUT IN THE COURSE OF THE DISCUSSION SAID:

25           "WELL, WE'VE GOT TO BE ALERT TO THE INCENTIVE

1        PAYMENTS NOT BEING TOTALLY OUT OF PROPORTION WITH THE

2        CLASS MEMBERS' LIKELY DISTRIBUTION."

3        AND THAT'S ONE OF THE -- NOT THE PRINCIPLES -- ONE OF THE

4    REASONS THAT I WAS ASKING ABOUT, TRYING TO GET A HANDLE ON WHAT

5    THE LIKELY RECOVERY WILL BE FOR CLASS MEMBERS.  AND I

6    UNDERSTAND IT'S GOING TO BE ALL OVER THE MAP, SO THAT'S KIND OF

7    HARD TO DO.

8        BUT IN TERMS OF ASSESSING WHETHER OR NOT THIS, AGAIN,

9    RELATIVELY MINOR AMOUNT IN TERMS OF THE GRAND SCHEME OF THINGS

10   IS REASONABLE OR NOT, I DON'T REALLY HAVE A BENCHMARK TO ASSESS

11   THAT.

12       MR. WARSHAW:  YES.  WE UNDERSTAND, YOUR HONOR, AND THE

13   FACTORS NOTED.  HOWEVER, WHAT IS IMPORTANT IS THAT NOT ONLY THE

14   RETROACTIVE DAMAGES COMING BACK, BUT THE PROSPECTIVE RELIEF.

15   AND THE PROSPECTIVE RELIEF GOES ON AD INFINITUM, UNLESS THERE'S

16   SOME TYPE OF OTHER CONTRACT SUPERSEDING THIS SETTLEMENT

17   AGREEMENT.

18       SO, FOR EXAMPLE, YOUR HONOR, WE RAN THE NUMBERS FOR

19   PROSPECTIVE RELIEF, AGAIN, ON TWO CLASS MEMBERS.  AND THERE IS

20   SIGNIFICANT CHANGE.  THERE'S A 30 PERCENT INCREASE OVER ONE.

21   ONE WAS QUARTERLY.  AND THERE WAS A 24 PERCENT INCREASE ON THE

22   OTHER ONE THAT WAS SEMIANNUAL.

23       THE COURT:  AND HOW MUCH DID THAT --

24       MR. WARSHAW:  SO FOR THE 24 --

25       THE COURT:  -- THEN WITH RESPECT TO THOSE TWO?

1    MR. WARSHAW:  YES.  FOR THE SEMIANNUAL 24 PERCENT INCREASE

2  THAT EQUALED ABOUT $1,000.

3    FOR THE QUARTERLY INCREASE, IT EQUALLED ABOUT $850.  AND

4  THAT'S AD INFINITUM.

5    SO IN TERMS OF WHAT THE CLASS MEMBER IS GOING TO GET BACK

6  WE THINK IT'S A FAIR NUMBER WHEN YOU LOOK AT THE $10,000

7  INCENTIVE.

8    THE OTHER THING REGARDING INCENTIVE, YOUR HONOR, IS THAT

9  THESE FOLKS ARE ARTISTS WHO SUED THEIR LABEL.  AND THERE'S

10  POTENTIAL STIGMA.  THERE'S POTENTIAL REPERCUSSIONS BEING AN

11  ARTIST AND SUING A LABEL IN HOLLYWOOD.

12    SO THEY PUT THEIR NECK OUT THERE.  THEY LENT THEIR NAME TO

13  IT.  WE THINK THERE'S SOME RISK INVOLVED WITH THAT, WHICH IS

14  ONE OF THE FACTORS, OF COURSE, THE COURT WOULD LOOK AT.

15    SO, AGAIN, WE FEEL THE AMOUNT IS REASONABLE.

16    THE COURT:  OKAY.  WHEN WE WERE LAST TOGETHER ON THIS

17  CASE, THERE WAS THE UNUSUAL SCENARIO -- AT LEAST FOR ME -- OF

18  CLASS REPRESENTATIVES, THE THREE OF THE SISTERS WHO WERE KIND

19  OF FLOATING OUT THERE.  AND YOUR CLASS COUNSEL EXTRICATED

20  THEMSELVES FROM REPRESENTING THEM.

21    AND THEN, DID WE HAVE COUNSEL FOR THEM HERE OR SOMETHING?

22  I SEEM TO RECALL --

23    MR. WARSHAW:  THEY HAVE MADE AN APPEARANCE IN THE CASE,

24  BUT THEY HAVE NOT SHOWN UP IN COURT, YOUR HONOR.

25    THE WITNESS:  OKAY.  DO WE KNOW ANY MORE ABOUT -- SO THEY

1  ARE SORT OF THERE.  THEY ARE NOT -- WE CERTAINLY, AT LEAST AT

2  THIS JUNCTURE I HAVEN'T RECEIVED ANY KIND OF OBJECTION.  WHO

3  KNOWS WHAT WILL HAPPEN IF THEY ARE -- UPON PRELIMINARY

4  APPROVAL.

5      DO WE KNOW ANYTHING MORE ABOUT WHAT --

6      MR. WARSHAW:  WE KNOW THEY INTENDED NOT TO OBJECT TO

7  PRELIMINARY APPROVAL.  THEY ARE SPEAKING TO BOTH COUNSEL FOR

8  PLAINTIFFS AND DEFENDANTS. THEY ARE EVALUATING THEIR OPTIONS.

9      THEY MAY MAKE A CLAIM.  THEY MAY OPT-OUT.  ALL THEIR

10 OPTIONS ARE AVAILABLE TO THEM.  AT THIS POINT THEY HAVE MADE NO

11 DECISION THAT THEY HAVE COMMUNICATED TO ME WHAT THEIR INTENT IS

12 OTHER THAN SEEING HOW THIS PROCEDURE PLAYS OUT.

13     THE COURT:  OKAY.  ALL RIGHT.  ANYTHING FURTHER?

14     MR. WARSHAW:  YOUR HONOR, I WOULD JUST LIKE TO ADD A FEW

15 POINTS.  WE FEEL THIS IS A SIGNIFICANT SETTLEMENT.  THERE WAS

16 ANOTHER SETTLEMENT THAT TOOK PLACE IN FEDERAL COURT IN NEW YORK

17 WITH SONY.

18     AND COMPARING THIS SETTLEMENT TO THE SONY SETTLEMENT, I

19 THINK WE'RE DOING A LOT BETTER THAN THE SONY SETTLEMENT FOR A

20 VARIETY OF REASONS.

21     ONE, THE -- WE CAN START WITH THE RETRO.  THE SONY

22 SETTLEMENT SUM WAS 7.65 MILLION.  HOWEVER, THEIR MARKET SHARE

23 IS APPROXIMATELY 30 PERCENT.  AND WARNER'S MARKET SHARE IS

24 APPROXIMATELY 20 PERCENT.

25     OUR SETTLEMENT SUM IS 11.5 MILLION.  THEY REQUIRED A FLOOR

```
 1    OF 28,500 DIGITAL DOWNLOADS TO PARTICIPATE IN THE SETTLEMENT.
 2         THE COURT:  SO YOU COULDN'T DO IT.
 3         MR. WARSHAW:  YOU COULDN'T --
 4         THE COURT:  YOU COULDN'T SUBMIT A CLAIM WITHOUT THAT.
 5         MR. WARSHAW:  IF YOU DID, YOU COULD SHARE $300,000.  THERE
 6    WAS A SEPARATE POT.  OUR CASE THERE'S NO FLOOR.  YOU DO ONE
 7    DIGITAL DOWNLOAD, YOU ARE IN LIKE ANY OTHER CLASS MEMBER.  NO
 8    WINNERS.  NO LOSERS.
 9         WITH RESPECT TO PROSPECTIVE RELIEF, YOUR HONOR, SONY HAD A
10    THREE PER CENT BUMP.  WE HAVE A FIVE PERCENT BUMP.  WE ALSO
11    HAVE A FLOOR OF TEN PERCENT, WHICH IS SIGNIFICANT, BECAUSE IF
12    YOU ARE AN ARTIST WITH A CONTRACT FOR FIVE PERCENT, YOU
13    IMMEDIATELY GO TO TEN.
14         WITH SONY THAT DIDN'T OCCUR.  IF YOU ARE AT FIVE PERCENT,
15    YOU GO TO EIGHT.  SO WE'VE NOW LIFTED THE BENCHMARK TO TEN
16    PERCENT FOR ALL ARTISTS WITH A CAP OF 14.
17         SO OVER TIME AND IN PERPETUITY THE VALUE OF THE SETTLEMENT
18    GOING FORWARD IS SUBSTANTIALLY MORE THAN THE SONY SETTLEMENT.
19         THE COURT:  IN THAT SONY SETTLEMENT DO YOU KNOW THIS ISSUE
20    THAT HAD BEEN ADDRESSED IN THE NONCLAIM FILING PUTATIVE CLASS
21    MEMBER, THE RELEASE/PROSPECTIVE RELIEF POINT.  HOW IT DID SHAKE
22    OUT IN THAT CASE?
23         MR. WARSHAW:  IT'S THE SAME STRUCTURE AS WE HAVE IN THIS
24    CASE.  IN PRELIMINARY FINAL APPROVAL -- BLESS YOU.
25         THE COURT:  WAS THERE ANY DISCUSSION ABOUT THAT AT ALL IN
```

1   THE --

2        MR. WARSHAW:  I HAVEN'T SEEN THE TRANSCRIPTS, YOUR HONOR,

3   SO NONE THAT I'M AWARE OF.  IT DIDN'T COME OUT IN THE ORDERS.

4        THE COURT:  OKAY.

5        MR. WARSHAW:  BUT THE CASE WAS APPROVED --

6        THE COURT:  WELL --

7        MR. WARSHAW:  -- AS A RESULT.

8        THE COURT:  OKAY.

9        MR. WARSHAW:  BUT THIS IS A TYPICAL CLASS DEVICE.  AS YOU

10  KNOW, YOUR HONOR, WE UNDERSTAND YOUR CONCERNS.  BUT WHEN

11  DEFENDANTS WANT PEACE, THEY WANT PEACE.  THEY DON'T WANT

12  ARTISTS COMING BACK TO THEM SAYING:

13          "I HAVE A $5,000 CLAIM.  I'M FILING A LAWSUIT."

14       THE COURT:  WELL, I MEAN, THAT'S IN -- YOU KNOW, THESE

15  ARE, AS I EXPRESSED TO YOU, MY CONCERNS.  AND THEY ARE NOT, YOU

16  KNOW -- IT'S A SIGNIFICANT CONCERN.  BUT THAT DOESN'T MEAN I

17  CAN'T BE PERSUADED THAT IT'S NOT SOMETHING THAT SHOULD CONCERN

18  ME.

19          AND ONE FACTOR THAT I WOULD CERTAINLY TAKE INTO ACCOUNT IS

20  IF THERE'S JUST FAIRLY CLEAR TRACK RECORD IN THIS PARTICULAR --

21  IN DISPOSING OF CASES IN THIS MARKET SEGMENT THAT THIS IS THE

22  STANDARD WAY THESE CASES GET RESOLVED.  YOU KNOW, I'LL LOOK AT

23  THAT AND THAT WILL BE SOMETHING I'LL TAKE INTO ACCOUNT.

24          SO IS THAT YOUR POSITION?

25       MR. WARSHAW:  YES.

1    THE COURT:  OKAY.

2    MR. WARSHAW:  AND, YOUR HONOR, THERE'S ANOTHER POINT I

3  WANT TO MAKE.  WE BROUGHT THIS CASE FOR LEGACY ARTISTS.  AND AS

4  MS. GODLEY SAID, A LOT OF THESE ARTISTS ARE LOW EARNERS IN

5  TERMS OF DIGITAL DOWNLOAD COMMERCE.  BUT THE CURRENT ARTISTS

6  ARE MAKING UP THE HIGH PERCENTAGE OF DIGITAL DOWNLOADS, NOT AN

7  ARTIST FROM THE '70'S OR '60'S.

8    THE COURT:  TRUE.

9    MR. WARSHAW:  AND JUST AN AUDIT, JUST DOING AN AUDIT.  YOU

10 GO TO WARNER AND SAY:

11    "LISTEN, I DON'T THINK THE NUMBERS ARE RIGHT" COULD

12 COST UPWARDS OF $50,000 FOR THE ARTIST TO CONDUCT.  BY WAY OF

13 THIS SETTLEMENT WE ARE BRINGING RELIEF TO FOLKS WHO CANNOT

14 OTHERWISE GET RELIEF BECAUSE THEY CAN'T EVEN AFFORD TO GET IN

15 THE DOOR TO CONDUCT THE AUDIT.

16    SO THERE'S THIS HUGE GAP OF LEGACY ARTISTS OUT THERE WHO

17 HAVE REALLY NO OTHER AVENUE BUT THIS CLASS ACTION LAWSUIT

18 SETTLEMENTS TO GET AN INCREASE IN THEIR BENEFITS.

19    ARTISTS WHO ARE CURRENT ARTISTS THEY HAVE RESOURCES. THEY

20 HAVE ATTORNEYS.  THEY HAVE NEGOTIATION POWER WITH THE LABELS.

21    BUT THE CLASS THAT WE FOCUSED ON, YOUR HONOR, DON'T.  SO I

22 THINK IT'S A SIGNIFICANT SETTLEMENT.  CLASS COUNSEL WORKED VERY

23 HARD WITH DEFENSE COUNSEL OVER A YEAR NEGOTIATING THIS.

24    SO WE TAKE ALL OF YOUR POINTS SERIOUSLY, YOUR HONOR, AND

25 THEY ARE VERY GOOD POINTS.  BUT THIS IS THE SETTLEMENT THAT,

1   YOU KNOW, WE FEEL DID BEST FOR THE CLASS.

2        THE COURT:  THE CLASS HERE IS COMPRISED OF THOSE PEOPLE

3   WHO, AS I UNDERSTAND IT, ENTERED INTO CONTRACTS DECEMBER 31ST,

4   '01 OR BEFORE THAT.

5        MR. WARSHAW:  CORRECT.

6        THE COURT:  AND WHAT IS THE MAGIC OF THAT DATE?

7        MR. WARSHAW:  THAT'S WHEN THE LABEL STARTED NEGOTIATING

8   NEW CONTRACTS WITH I TUNES AND DOWNLOADS BECAME PREVALENT.  AND

9   THERE'S SPECIFIC LANGUAGE DEALING WITH DIGITAL DOWNLOADS.  OUR

10  CONTRACTS DON'T HAVE THAT LANGUAGE.

11       THE COURT:  OKAY.  WELL, I WILL -- I WILL GRANT

12  PRELIMINARY APPROVAL, AND YOU CAN ADDRESS THE ISSUE, IN

13  PARTICULAR, THAT I WAS HUNG UP ABOUT IN THE FINAL APPROVAL

14  PAPERS.  AND WE'LL GO FROM THERE.

15       I SHOULD MENTION THAT I DID REVIEW THE NOTICE PROVISIONS;

16  THAT THIS SEEMS TO BE IN SOME WAYS EASIER NOTICE SITUATION THAN

17  MOST BECAUSE YOU CAN GO DIRECTLY TO THE PUTATIVE CLASS MEMBERS,

18  AND THEY ARE GOING TO DO A PRESS RELEASE, WHICH IS GOOD.  SO

19  ALL OF THAT IS FINE.

20       SO DO YOU HAVE -- I THINK YOU HAD PROPOSED DATES FOR THE

21  FINAL HEARING AND SETTLEMENT, NO OBJECTION AND ALL THE REST.

22       MR. WARSHAW:  YES, YOUR HONOR.  WE PUT THAT IN THE MOTION,

23  YOUR HONOR.  WE LET THE PROPOSED ORDER WITH BLANKS IN IT IN

24  CASE THE COURT HAD QUESTIONS ABOUT THE TIMING.  THIS IS UNUSUAL

25  FOR, IN MY EXPERIENCE, THE NUMBER OF DAYS WE NEED BETWEEN

1   PRELIMINARY AND FINAL.

2        THE REASON IS THE TIME THAT IS REQUIRED TO PROCESS THE

3   CLAIMS BY REVIEWING THE CONTRACTS.

4        SO WE HAVE A BIG LONG END IN THE BACK.  I CAN GIVE THOSE

5   DATES TO YOUR HONOR NOW IF YOU --

6        THE COURT:  I THINK YOU PROVIDED THAT TO ME.

7        MR. WARSHAW:  THEY ARE THE LAST PAGE OF THE MOTION FOR

8   PRELIMINARY APPROVAL.

9        THE COURT:  AND THOSE ARE THE DATES --

10       MS. GODLEY:  YES.

11       THE COURT:  SO I'LL GO AHEAD AND GIVE YOU AN ORDER THAT

12  ENCOMPASSES THOSE DATES AND PROVIDES PRELIMINARY APPROVAL, AND

13  THEN WE'LL MOVE FORWARD.

14       MR. WARSHAW:  GREAT.  THANK YOU, YOUR HONOR.

15       THE COURT:  THANK YOU.

16       MS. GODLEY:  THANK YOU, YOUR HONOR.

17       (THEREUPON, THIS HEARING WAS CONCLUDED.)

18  STENOGRAPHY CERTIFICATION

19       "I CERTIFY THAT THE FOREGOING IS A CORRECT
    TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
20  ABOVE-ENTITLED MATTER."
         JANUARY 31, 2014
21       KATHERINE WYATT

22

23

24

25

KATHERINE WYATT, CERTIFIED COURT REPORTER # 9866
925-212-5224  CSR  RPR  RMR