DANIEL L. WARSHAW (Bar No. 185365)
 dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

JAMES J. PIZZIRUSSO (admitted *pro hac vice*)
 jpizzirusso@hausfeldllp.com
**HAUSFELD, LLP**
1700 K Street NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

Attorneys for Plaintiffs and the Class

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: WARNER MUSIC GROUP CORP. DIGITAL DOWNLOADS LITIGATION | CASE NO. 12-CV-0559-RS<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      January 8, 2015<br>Time:      1:30 p.m.<br>Crtrm.:   3, 17th Floor<br>Judge:    Hon. Richard Seeborg |

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 8, 2015, at 1:30 p.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Richard Seeborg, United States District Court, Northern District of California, San Francisco Division, Plaintiffs Kathy Sledge Lightfoot, Ronee Blakley, and Gary Wright (collectively, "Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order finally approving the class action settlement in this case.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable; that the Notice Plan complied with applicable legal standards; and that the Settlement Class satisfies the requirements for class certification.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Class Counsel, the pleadings and papers on file herein, and upon such additional evidence or argument as may be accepted by the Court at or prior to the hearing on this motion.

DATED: November 26, 2014          **PEARSON, SIMON & WARSHAW, LLP**


By:        */s/ Daniel L. Warshaw*
                  DANIEL L. WARSHAW
            Attorneys for Plaintiffs and the Class

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................................1

II.   BACKGROUND....................................................................................................3

   A.    Negotiation of the Settlement................................................................3

   B.    SETTLEMENT TERMS.........................................................................4

      1.    Past Settlement Relief ................................................................4

      2.    Prospective Settlement Relief ...................................................5

      3.    Release ......................................................................................7

   C.    Class Notice...........................................................................................7

   D.    Claims Administration ..........................................................................8

      1.    Work Completed To Date ..........................................................8

      2.    Work To Be Completed If Final Approval Is Granted.................9

   E.    Estimated Results ................................................................................10

      1.    Claim Forms Associated With Class Contracts .........................10

      2.    Past Relief Analysis .................................................................10

III.  FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...................11

   A.    Standard for Final Approval................................................................11

   B.    The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness ...........................12

   C.    The Settlement Is Fair, Adequate, and Reasonable.............................13

      1.    The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation..............13

      2.    The Risk of Maintaining Class Action Status Throughout the Trial...........14

      3.    The Amount Offered in Settlement ...........................................14

      4.    The Experience and Views of Counsel .....................................16

      5.    The Reaction of Class Members to the Settlement ...................17

   D.    THE NOTICE PLAN COMPLIED WITH APPLICABLE LEGAL

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

STANDARDS ....................................................................................................19

    1.    Implementation of Notice ..............................................................19

    2.    Form and Content of Notice ...........................................................20

E.    The Claims Process Is Fair, Necessary, and Reasonable ...........................21

    1.    Claim Forms are a Common and Appropriate Feature of Class Action Settlements ........................................................................21

    2.    The Claim Form Was Simple and Easy To Submit ......................23

F.    Claim Forms are Equally Valid For Forward-Looking Relief ...................24

IV.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 ..........25

V.    CONCLUSION ...................................................................................................26

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................................ 19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................................... 2, 11, 12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 11

*F.B.T. Prods., LLC v. Aftermath Records*,
    621 F.3d 958 (9th Cir. 2010) ..................................................................................................... 3

*Kirkorian v. Borelli*,
    695 F.Supp. 446 (N.D. Cal. 1988) ........................................................................................... 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th. Cir. 2012) .............................................................................................. 1, 11

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ................................................................................................. 17

*Mullane v. Central Hanover Bank & Trust Co.*,
    229 U.S. 306 (1950) ................................................................................................................ 19

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 1, 12, 17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................................................... 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................................................... 11

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...................................................................................................... 16

STATUTES

Fed. R. Civ. Proc. 23(c)(2)(B) ....................................................................................... 2, 19, 20

Fed. R. Civ. Proc. 23(e)(2) ......................................................................................................... 1

Fed. R. Civ. Proc. 23(e) ............................................................................................................ 11

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)...........................................................3, 26

Conte & Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2011).......................................12

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This motion represents the final step in resolving litigation between recording artists and music producers (collectively, "Artists") and Defendant Warner Music Group Corp. ("WMG") involving allegations that WMG failed to properly credit royalties to Artists for exploitation of their music in the form of digital downloads or mastertones ("Downloads/Mastertones").  Rather than spend valuable party and judicial resources litigating this case for an extended period into the future, the parties to this action engaged in early settlement negotiations to try to reach a class-wide settlement.  After over a year of hard fought, arm's-length negotiations featuring multiple in-person mediation sessions with the Honorable Daniel Weinstein (Ret.) and numerous in-person and telephonic conferences of counsel, the parties reached the Settlement Agreement[1] on December 27, 2013.  (Dkt. No. 96-1, Ex. A.)

This Court granted preliminary approval to the Settlement Agreement on January 23, 2014. (Dkt. No. 101.)  The Court found that the Settlement Agreement fell within the necessary range of reasonableness and certified a Settlement Class defined as: "All persons and entities (and their successors-in-interest, assigns and heirs) that are parties to a Royalty Rate Contract, dated on or prior to December 31, 2001, with a WMG U.S. Label."  (*Id.*)  Following a successful notice campaign and robust claims period, Plaintiffs now move the Court to finally approve the Settlement Agreement and conclude this litigation.

The Settlement Agreement is fair, adequate, and reasonable, as required by Federal Rule of Civil Procedure 23.  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th. Cir. 2012).  As an initial matter, the settlement was not reached through fraud, overreaching, or collusion by the negotiating parties, and therefore is entitled to a presumption of fairness.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  On the merits,

---

[1] The "Settlement Agreement" refers to the Stipulation and Agreement of Settlement filed as Dkt. No. 96-1, Ex. A.  All capitalized terms herein shall have the definitions given to them in the Settlement Agreement, unless otherwise stated.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

the settlement directly addresses the Class Members' concerns with WMG's royalty treatment of their Downloads/Mastertones by: (1) providing past relief to eligible Class Members in the form of a pro rata share of the Settlement Fund; and (2) providing eligible Class Members prospective relief in the form of a permanent future increase in their royalties.  This is an exceptional result for the Class, especially in light of WMG's considerable defenses in this case.

The settlement has seen an overwhelmingly positive reaction from the music community, with 2052 claims being filed and only 40 opt outs, (not all of which exclusion requests were even filed by Class Members).  Further, there has been only one objection to the settlement, brought by disappointed former class representatives unhappy with their individual take, which objection was not perfected.  *See* Declaration of Daniel L. Warshaw ("Warshaw Decl.") ¶¶ 16-20.  In light of the factors courts must weigh when evaluating the fairness of a settlement, *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), final approval of the Settlement Agreement in this case is warranted.

The Notice plan approved by the Court also constituted "the best notice that is practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  It involved direct mail notice by way of the royalty statements and payments WMG normally sends to Class Members, as well as publication in major industry magazines and newspapers in major music markets.  Class Counsel also provided notice beyond the Notice Plan by sending a postcard to over 26,000 royalty recipients reminding potential Class Members to file a claim as the claims period was closing.

The claims process is also appropriate here.  While the Class is well-defined and ascertainable based upon objective criteria (a royalty rate contract with a WMG U.S. Label prior to 2002), identifying each particular Class member and the relief due that Class member requires a time-intensive process.  WMG sends out royalty statements to over 26,000 royalty recipients. Many of those royalty recipients are not in the Class for a variety of reasons, including because their contract is beyond the date range, they receive royalties based upon a letter of direction[2] their

---

[2] It is not uncommon for Artists to allow others, most often producers, to share in their royalty stream based upon a letter of direction to WMG instructing WMG to pay out some of the royalties (footnote continued)

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   contract is not with a WMG U.S. Label, or they have individually settled the issue in this lawsuit

2   with WMG.  Specifically identifying precisely which of the over 26,000 royalty recipients is in the

3   Class would literally take tens of thousands of hours of work.  Likewise determining the relief due

4   an Artist under the settlement requires a detailed revenue inquiry for past relief and a time-

5   consuming royalty rate analysis and adjustment for prospective relief.  It is in exactly these types

6   of situations that courts routinely approve the use of a claims process for a class member to obtain

7   the settlement relief.

8        Finally, in granting preliminary approval, the Court inherently found that the Class could

9   be certified for settlement purposes.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004).

10  Plaintiffs submit that the Class satisfies all the requirements for certification under Rule 23 and

11  request that the Court grant final approval on behalf of the Class.

12  **II.**     **BACKGROUND**

13       **A.**     **Negotiation of the Settlement**

14       Plaintiffs and Class Members in this case are Artists who entered into contracts with WMG

15  that provide for the payment of royalties upon WMG's exploitation of the Artists' music.

16  Plaintiffs alleged that WMG systematically breached these contracts by underpaying Artists

17  royalties owed from WMG's licensing of the Artists' music to digital content providers, such as

18  Apple and Amazon.  Specifically, Plaintiffs alleged that WMG improperly treated the retail

19  distribution of Artists' Downloads/Mastertones as "sales" instead of "licenses," and paid Artists

20  royalties based upon the lower sales royalty rate rather than the licensing royalty rate.  *See F.B.T.*

21  *Productions, LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010).  WMG has at all times

22  vigorously denied these allegations and contested the applicability of *F.B.T.* to its contracts.

23       Following the Court's appointment of Interim Class Counsel (Dkt. No. 48) and an early

24  pleadings challenge by WMG (Dkt. No. 23), the parties began initial settlement discussions.

25  _____

26  due the Artist to a third party on the Artist's behalf.  In this situation, the third party typically has

27  an agreement with the Artist but not with WMG and WMG typically has no input into or control
    over how much the Artist has agreed to pay the third party.

28

1  Significantly, Class Counsel in this case are also counsel of record in two similar class actions

2  against WMG's competitors, UMG Recordings, Inc. and EMI Group Limited, which helped

3  inform Class Counsel's litigation strategy and settlement negotiations.  Warshaw Decl., ¶ 4.  Class

4  Counsel's experience in the UMG litigation was particularly valuable, as that case has seen

5  thousands of recording contracts produced and reviewed, numerous depositions taken, and

6  multiple dispositive motions filed since it was initiated in the spring of 2011.  *Id.,* ¶ 4.

7        The parties first participated in a face-to-face meeting at defense counsel's office to discuss

8  a potential resolution of this case on October 10, 2012.  *Id.,* ¶ 5.  That meeting led the parties to

9  engage the Honorable Daniel Weinstein (Ret.) of JAMS to serve as a third party neutral and

10  oversee a mediation process.  *Id.,* ¶ 5.  Over the next several months, the parties held three in-

11  person mediation sessions and multiple in-person and telephonic smaller sessions.  *Id.,* ¶ 5.  Over

12  the course of more than one year, the parties engaged in extensive, hard-fought settlement

13  negotiations that were often contentious.  At times, it appeared that no resolution would be

14  reached, but those negotiations ultimately resulted in the settlement now before the Court.  *Id.,* ¶ 5.

15    **B.    SETTLEMENT TERMS**

16        The Settlement Agreement provides substantial and meaningful relief to the Class.  It

17  consists of both past relief that requires WMG to pay eligible Class Members for past exploitation

18  of their Downloads/Mastertones and prospective relief that changes the way WMG calculates

19  royalties for Downloads/Mastertones in the future.  The material terms of the Settlement

20  Agreement are:

21    **1.    Past Settlement Relief**

22        WMG made available up to $11,500,000 to pay Class Members' claims, administrative

23  and notice expenses, attorneys' fees and costs, and incentive awards.  Pursuant to the Settlement

24  Agreement, WMG placed the $11,500,000 into a "Fund" from which it will pay claims on a

25  claims-made basis (and any residual funds, after deducting necessary fees and expenses, will be

26  used to pay Class Members prospective relief, as explained further below).  To be clear, however,

27  WMG will continue paying future relief even after the initial $11,500,000 fund is depleted.  With

28  respect to Past Settlement Relief, the Settlement Agreement provides in relevant part:

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

- Class Members who submit a valid Claim Form will receive their per capita share of the Fund Payout. Class Members' share will be based on a formula calculated as the ratio of the revenue they generated for a WMG U.S. Label from U.S. exploitation of Subject Masters as Downloads/Mastertones between January 1, 2009 and December 31, 2012 (the "Period") to the total U.S. sales by WMG of Subject Masters as Downloads/Mastertones for the Settlement Class for the Period. The parties stipulated that the total U.S. sales figure for the Period for the Settlement Class was $381,510,000 ("Class Revenue").

- All past relief owed to Class Members will be automatically credited by WMG U.S. Labels through WMG's royalty systems to the Class Members' royalty accounts, and will first be applied in recoupment of any unrecouped balances[3] in those royalty accounts.

- Any Class Members who are Included Other Royalty Recipients (e.g., record producers, mixers, remixers, engineers, and other royalty recipients) and who make a valid claim will receive prorated past relief based on the ratio of their current Basic U.S. Rate to the applicable recording artist's current Basic U.S. Rate.

*See* Settlement Agreement, ¶¶ 16(a) and 1 (for definitions).

### 2. Prospective Settlement Relief

In addition to paying the past relief as outlined above, WMG will also make changes in the way it pays royalties going forward in perpetuity. Generally speaking, all Class Members who submit a valid Claim Form will be eligible to receive a permanent 5 percentage point increase in their Basic U.S. Royalty Rate for exploitation of their Downloads/Mastertones, with a floor of 10% and a cap of 14% as well as a percentage point increase in their foreign royalty rates. With respect to Prospective Settlement Relief, the Settlement Agreement provides in relevant part:

---

[3] An Artist is "unrecouped" when certain sums have been paid on behalf of, or to, the Artist (such as sums for recording the album or sums paid to the Artist) as advances against future royalty payments and those sums are greater than the royalty payments earned by the Artist under the applicable contract.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

- *U.S. Exploitation.* Settlement Class Members who submit a valid Claim Form will receive a 5 percentage point increase in their Basic U.S. Rate for U.S. exploitation of Subject Masters as Downloads/Mastertones. In no event will Settlement Class Members' Basic U.S. Rate be increased to exceed the Royalty Cap (14%) or fall below the Royalty Floor (10%). If royalties are paid based upon a Basic Worldwide Rate (*i.e.*, a single Royalty Rate applied to the full-priced sale of records through normal retail channels on a worldwide basis, rather than a U.S.-only basis), then 5 percentage points will be added to that Royalty Rate for U.S. exploitation of Subject Masters as Downloads/Mastertones, subject to the Royalty Cap and Royalty Floor. For any Settlement Class Member whose royalties are already being calculated based on a Basic U.S. Rate that exceeds the Royalty Cap, that Basic U.S. Rate will remain in place and will not be altered.

- *Foreign (ex-U.S.) Exploitation.* Settlement Class Members who submit a valid Claim Form will receive an increase in their Basic Foreign Rates for foreign (ex-U.S.) exploitation of Subject Masters as Downloads/Mastertones, as follows:

  (1)     Only for the purposes of calculating the new Basic Foreign Rates, the currently used Basic U.S. Rate will be increased by 2.5 percentage points, subject to the Royalty Cap (but not the Royalty Floor), and multiplied by the ratio of the currently applied Basic Foreign Rate to the currently applied Basic U.S. Rate.

  (2)     If a Class Contract contains a Basic Worldwide Rate, then 2.5 percentage points will be added to the currently used Basic Worldwide Rate, subject to the Royalty Cap (but not the Royalty Floor), for the calculation of the new Basic Worldwide Rate to be applied to foreign exploitation of Subject Masters as Downloads/Mastertones.

- *Penny Rates.* For those Class Members who are paid royalties on a Penny Rate Basis, the *U.S. Exploitation* and *Foreign (ex-U.S.) Exploitation* provisions above will be applied after conversion of the Penny Rate to an equivalent Royalty Rate, as

1    set forth in Paragraph 16(b)(3) of the Settlement Agreement.

2    *See* Settlement Agreement, ¶¶ 16(b) and 1 (for definitions).[4]

3    **3.    Release**

4    The settlement provides that all Class Members release any claim that (1) transactions

5    involving Downloads/Mastertones are not sales; and/or (2) compensation for transactions

6    involving Downloads/Mastertones should not be paid on a Royalty Rate Basis or a Penny Rate

7    Basis as applicable under the so-called "Records Sold" provision of the applicable Class Contract;

8    and/or (3) royalty recipients should receive differing royalty treatment for Downloads/

9    Mastertones depending on the nature of WMG's contractual relationship with digital music

10   retailers such as Apple's iTunes Store. *Id.,* ¶ 1(ee). Class members are not releasing any other

11   claim as to the adequacy of their royalties in the past or going forward. *Id.,* ¶ 1.

12   **C.    Class Notice**

13   WMG was responsible for paying all of the expenses associated with administering the

14   settlement and providing Notice to the Class from the Fund. The Court-approved Settlement

15   Administrator was Rust Consulting, one of the leading class action settlement administrators in the

16   country. *See* Settlement Agreement, ¶1 (mm). The Class Notice involved two phases: (1) direct

17   mail notice by WMG with its regularly scheduled royalty statements and payments sent to Class

18   Members; and (2) notice by publication in major industry magazines and newspapers in major

19   music markets implemented by Rust Consulting. Beyond the official Notice plan, Class Counsel

20   voluntarily paid for and sent 26,838 postcard reminders notifying Class Members in May 2014 to

21   make a claim before the deadline. Declaration of Melissa D. Eisert ("Eisert Decl."), ¶ 15.

22   For the purposes of disseminating class notice, WMG could not determine the exact

23   identity or number of all Class Members from among its thousands and thousands of royalty

24   recipients. *See* Section III.E.1, *infra.* For this reason, the Notice plan was by design overbroad

25   ────────────────

26   [4] The remaining settlement provisions regarding prospective relief—such as further contractual reductions, the manner of crediting the prospective relief through Class Members' royalty accounts, and payments to Included Other Royalty Recipients—are detailed in Paragraphs

27   16(b)(4)-(8) of the Settlement Agreement.

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

and provided for notice of the settlement to everyone who receives U.S. royalty statements from WMG except for a small subset of Artists.[5]  As a result, WMG sent notice in royalty statements to over 26,000 royalty recipients.  Declaration of Ellen Hochberg ("Hochberg Decl."), ¶ 4.  Over 26,000 royalty recipients also received the reminder postcard.  Eisert Decl., ¶ 15.  Some portion of those royalty recipients, although it is not certain exactly how many without a detailed and time-consuming analysis (*see* Sections II.D and E, *infra* and Hochberg Decl, ¶¶ 7(a)-(e)), are artists with contracts signed within the last 12 years and not part of the Class.  Hochberg Decl., ¶ 4.  Others are excluded from the Class for various other reasons, including but not limited to:  they have already resolved the issue with WMG; WMG does not have the right to sell the Downloads/Mastertones of the Artists' recordings; or the Artist is not compensated pursuant to royalty provisions.  *Id*.  The exact identity of producer Class Members is even more difficult to identify.  Many producers are paid under letters of direction from the recording artist and not under contract with WMG, excluding them from the Class.  *Id*.

### D.   Claims Administration

#### 1.   Work Completed To Date

The claim submission period opened after the Court granted preliminary approval of the settlement on January 23, 2014 and continued for four months through May 31, 2014.  *Id*., ¶ 5.  Ultimately, 2,052 claim forms were submitted.  Eisert Decl., ¶ 6.  Over 130 of those claim forms were submitted after the May 31, 2014 deadline, but all claim forms that were filed were processed, including the late claim forms; WMG waived the claim submission deadline through the filing of this motion for final approval to be as inclusive as possible.  Hochberg Decl. ¶ 5.

The processing of the claim forms was an arduous and time consuming task that is ongoing.  *Id*., ¶ 6.  Six analysts hired especially for this project by Rust Consulting worked on the

---

[5] WMG did not send notice to its "on roster" U.S. artists with agreements dated after January 1, 2002 (which is a very limited group for which contract information could be readily obtained) and certain individuals or entities with non-royalty rate contracts which are paid through a different process (another very limited group), and could also readily be identified as outside the Class.  Hochberg Decl, ¶ 3.  "On roster" artists are those actively recording for WMG.  *Id*.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  process for over 2,700 hours. *Id.* This is the equivalent of one person working full time for over

2  one year and four months. All of that work was reviewed by WMG's in-house counsel, which

3  hours are not captured in the 2,700 hour total. *Id.* Significant hours by WMG's outside counsel in

4  overseeing the process are also not captured in this hour total. *Id.* This work included a search of

5  WMG's electronic and paper files for all contracts and amendments related to the claimant;

6  discography and internet research if a connection to WMG could not readily be identified from the

7  claim form; review of all contracts to determine whether they were prior to 2002, with a WMG

8  U.S. Label and provided for compensation through a royalty structure (that is, a "Class Contract");

9  determination as to whether all necessary signatories had completed a claim form; review of

10 WMG files to determine whether the claimant was outside of the Class by result of an audit or

11 litigation settlement; and identification of relevant revenue related to the claimant. A detailed

12 outline of the work completed is set forth in Paragraphs 7(a)-(e) of the Hochberg Decl.

### 2.    Work To Be Completed If Final Approval Is Granted

14     Additional work will be required for each claimant after final approval. Specifically,

15 WMG will need to conduct:

16     • A detailed analysis of the revenue associated with each Class Contract to determine

17        the exact amount of payout to each Claimant (*see* further discussion at § II.2.E.(2)

18        *infra*); and

19     • A detailed analysis and implementation of the increased royalty rates for each

20        Claimant going forward consistent with the Settlement Agreement. This work will

21        require WMG analysts to determine the current U.S. and foreign rates for all of the

22        Authorized Claimants, on an artist-by-artist basis, which rates often vary by album

23        such that an individual band or artist can have four or five (or more) different rates

24        for both U.S. and foreign sales, and then accurately apply the appropriate rate

25        increases under the Settlement Agreement and manually modify WMG's royalty

26        system accordingly on an artist-by-artist and rate-by-rate basis.

27     WMG estimates that it will take two analysts working full time up to a year to implement

28 the past and future relief for each Claimant. Hochberg Decl., ¶ 11.

E.    **Estimated Results**

1.    **Claim Forms Associated With Class Contracts**

WMG's claims processing is ongoing, but to date it estimates the following results:

- Of the 2052 claim forms submitted:

  ♦ ~130 were filed late but still included in the review process and deemed an Authorized Claimant if the claimant is a Class Member. Hochberg Decl., ¶ 8.

  ♦ ~1069 are associated with one or more Class Contracts and are not excluded from the Class by means of a settlement ("Authorized Claimants"). *Id.*

  ♦ ~45 are still under review but will be fully processed by the time of the hearing.

  ♦ ~938 are not associated with a Class Contract or are excluded from the Class by means of an individual settlement with WMG. *Id.*

Given the simplicity of the claim form, a number of recording artists, producers and even many music publishers and songwriters (who would not be part of the Class in any event) submitted claim forms just in case they would be deemed part of the Class, resulting in the high number of claim forms not associated in any way with a Class Contract. *Id.,* ¶ 9.

2.    **Past Relief Analysis**

WMG reports that, based on its analysis to date, it anticipates paying out ~$3.5 million in past relief. *Id.,* ¶ 12. This is equivalent to a Class take rate of ~40%; that is claims have been filed by Class Member representing ~40% of the total Class Revenue (a high claims rate in a class settlement). To be clear, the analysis of the past relief payout is not a precise calculation of the amount that will be paid. *Id.* Certain categories of Authorized Claimants require a detailed and further time-consuming analysis to determine exactly what past relief payout they will receive. For example, for those Authorized Claimants with one or more Class Contracts and one or more non-Class Contracts, the exact amount of Class-related revenue needs to be calculated and utilized in the payout formula. *Id.* This will require WMG to determine which recordings are subject to the in-Class contracts and which recordings are subject to the out-of-Class contracts, determine the revenue per album subject to the in-Class contracts, and then calculate the past relief. That detailed work will take significant time and has not been done with precision at this point. WMG

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  estimates that, on average for these Authorized Claimants, 75% of the revenue will be associated

2  with a Class Contract.  *Id*.

3      Likewise, a producer's past relief is a fraction of the amount that would be paid to the

4  Artist based upon the same revenue.  *Id*., ¶ 13.  This fraction is calculated by comparing the

5  producer's royalty rate (often 3%) to the Artist's royalty rate.  Again, this is a detailed calculation

6  that will require careful review of the applicable royalty rates that will take much time.  At this

7  juncture, WMG has estimated the past relief for producers at 30% of the payout to the Artist for

8  the same revenue.  *Id*.[6]

9  **III.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

10      **A.    Standard for Final Approval**

11      The law favors the compromise and settlement of class action lawsuits.  *See Churchill*

12  *Vill.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

13  Indeed, "there is an overriding public interest in settling and quieting litigation" and this is

14  "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

15  Cir. 1976).  The decision to approve or reject a settlement is committed to the sound discretion of

16  the trial court because it "is exposed to the litigants and their strategies, positions and proof."

17  *Lane*, 696 F.3d at 818 (9th. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

18  Cir. 1998)).  However, in exercising such discretion, the trial court should give "proper deference

19  to the private consensual decision of the parties."  *Hanlon*, 150 F.3d at 1027.  "[T]he court's

20  intrusion upon what is otherwise a private consensual agreement . . . must be limited to the extent

21  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

22  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

23  whole, is fair, reasonable and adequate to all concerned."  *Id.*

24      In determining whether a class action settlement is fair, adequate, and reasonable, district

25  courts in the Ninth Circuit balance the following factors:

---

27  [6] WMG made other like assumptions in calculating the estimated payout. Id.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1

> (1) the strength of the plaintiff's case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375

(9th Cir. 1993).  This list is not exclusive, and different factors may predominate in different

factual contexts.  *Torrisi*, 8 F.3d at 1375-76 (citing *Officers for Justice v. Civil Serv. Comm'n of*

*San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

**B.**    **The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness**

Before approving a class action settlement, the trial court must be satisfied that the

agreement is not the product of fraud, overreaching, or collusion.  Where a settlement is reached

following discovery and arm's-length negotiations, it is presumed to be fair.  Conte & Newberg,

*Newberg on Class Actions*, § 11.41 (4th ed. 2011); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.

The settlement here was achieved following numerous arm's-length negotiations between

the parties.  These negotiations spanned the course of more than one year and included three in-

person mediation sessions with Judge Weinstein and multiple in-person and telephonic smaller

sessions.  Warshaw Decl., ¶ 5.  The negotiations also included hundreds of hours of independent

discussions between experienced counsel.  *Id.*, ¶ 6.  While the parties did not exchange formal

discovery, significant information was exchanged as part of the mediation process.  *Id.*, ¶ 7.  Class

Counsel requested and reviewed internal WMG documents in order to evaluate the strengths and

weaknesses of Plaintiffs' claims and determine the fairness of the settlement.  *Id.*, ¶ 7.  In addition,

Class Counsel engaged a forensic accounting firm to assist in confirmatory discovery of the

information and materials produced by WMG.  *Id.*; *see also* Declaration of Joseph Rust.  The

Settlement Agreement was achieved only after many months of intensive work and corroboration

by counsel.  It was not the product of fraud, overreaching, or collusion by the parties, and as a

result, is presumptively fair.  Warshaw Decl., ¶ 6.

/ / /

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

C.     **The Settlement Is Fair, Adequate, and Reasonable**

In evaluating the Settlement Agreement, the Court must balance the factors set forth in *Churchill Village*, 361 F.3d at 575. As shown below, consideration of the relevant *Churchill* factors supports final approval of the Settlement Agreement in this case.

**1.     The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiffs brought this action based in large part on the Ninth Circuit's decision in *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958, 964-66 (9th Cir. 2010), that Downloads/Mastertones should generally be treated as "licenses," not "sales." While Class Counsel were confident in their legal theory, WMG argued from the outset that its contracts contained different language that would compel a different result. Notably, to prevail in this case, Class Counsel would have had to establish specific facts and prove their legal theory both on the merits *and* on a class-wide basis. Based on WMG's argument and Class Counsel's experience in the UMG and EMI cases, this would have been a difficult task. The UMG action in particular— filed almost a year before this action—has seen multiple dispositive and non-dispositive motions filed, the production of thousands of recording contracts, and the taking of numerous depositions, while not yet reaching the class certification stage. Warshaw Decl., ¶ 4. Plaintiffs would have likely gone through a similar path in this litigation, with no guarantee of success following years of hard work and thousands of hours. For example, recently a court in New York granted summary judgment *to Sony Music*—rejecting the artist's claims— in a similar case brought by the band, Toto. *See,* Warshaw Decl., Ex. C (*Toto Inc., v. Sony Music Entm't*, 12-cv-01434-RJS (S.D.N.Y.), Dkt. No. 117).

Moreover, before the parties engaged in settlement discussions, WMG brought a motion to dismiss several causes of action in Plaintiffs' complaint. (Dkt. No. 23.) Plaintiffs prepared, but did not file, an opposition to WMG's motion to dismiss, and the outcome of this motion could have limited the amount or type of relief Plaintiffs ultimately obtained. That Class Counsel were able to achieve the results they did for the Class despite the risks they faced speaks to the level of skill and preparation they brought to this case. Proceeding with this litigation would not guarantee

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  an increased benefit to the Class, but would guarantee additional time and resources spent by both

2  parties. Given the balance of the strength of Plaintiffs' case and the risks and expenses they faced

3  in continuing to litigate, this factor weighs in favor of final approval.

4  **2.    The Risk of Maintaining Class Action Status Throughout the Trial**

5  As they detailed in their Motion for Preliminary Approval (Dkt. No. 96), Plaintiffs contend

6  that this action could be maintained as a class action. (*Id.,* at 13-16.) Plaintiffs believe this case

7  satisfies the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

8  representation—and 23(b)(2) and (3)—appropriateness of injunctive relief and predominance. At

9  the same time, Plaintiffs recognize that there are challenges in this case to class certification,

10  particularly under Rule 23(b)(3). WMG's primary argument against class certification would be

11  that variations among the Class Contracts raise substantial individualized questions that preclude

12  predominance of common questions of law or fact. Aside from the merits, this issue would likely

13  be one of the most critical in the case. Although Plaintiffs are confident they could prevail on this

14  issue, the risk of maintaining class action status in this case is significant.

15  **3.    The Amount Offered in Settlement**

16  The Settlement Agreement provides substantial past and prospective relief to Class

17  Members who make a valid claim (Authorized Claimants). As detailed above, WMG created a

18  Fund of up to $11,500,000 to pay Authorized Claimants' claims, administrative and notice

19  expenses, attorneys' fees and costs, and incentive awards. Settlement Agreement, ¶¶ 16(a) and 1.

20  WMG will pay claims for past relief from the Fund on a claims-made basis, then use residual

21  funds to pay Authorized Claimants prospective relief. Thus, the Fund is in many ways a "hybrid"

22  common fund and claims-made fund: while WMG will first pay claims from the Fund on a

23  claims-made basis, the remaining amount (after deducting necessary fees and expenses) will be

24  ultimately paid to Authorized Claimants through future royalty payments. Warshaw Decl., ¶ 10.

25  WMG's future obligation is not limited to the remaining amount in the Settlement Fund, however;

26  it is obligated to pay the increased rates for as long as it pays royalties on Downloads/Mastertones,

27  which WMG anticipates will exceed the remaining funds in the Settlement Fund. Hochberg Decl.,

28  ¶ 12.

1       The value of the Fund is particularly outstanding when compared to the settlement

2   approved in the Sony Music digital downloads case,[7] which involved essentially the same issues

3   as this case (the "Sony Music Settlement").  The Sony Music Settlement created a fund of $7.65

4   million, less attorneys' fees of $2.65 million for a net sum of $5 million and payout of increased

5   royalties.  Even after subtracting Class Counsel's proposed fee award and all other administrative

6   and legal expenses, the net value of the Fund in this case is approximately $8 million plus the

7   payout of any additional increased royalties beyond the Settlement Fund. Warshaw Decl., ¶ 13.

8   This is a better result than the Sony Music Settlement, especially in light of Sony's larger market

9   share (its share of the digital music market in 2013 was 22.3% compared to WMG's 17.1%).[8]

10      The settlement also provides for prospective relief.  WMG will provide a *permanent*

11  *increase* in eligible Class Members' future royalty rates for both U.S. and foreign exploitation of

12  Downloads/Mastertones.  For Downloads/Mastertones in the U.S., Authorized Claimants will

13  receive a 5 percentage point increase in perpetuity in their Basic U.S. Rate, with a floor of 10%

14  and a cap of 14%.  *See* Settlement Agreement ¶ 16(b)(1).  For Downloads/Mastertones outside the

15  U.S., Authorized Claimants will receive an increase in their Basic Foreign Rate, calculated by

16  increasing their Basic U.S. Rate by 2.5 percentage points then multiplying it by the ratio of their

17  current Basic Foreign Rate to their current Basic U.S. Rate.  *Id.,* ¶ 16(b)(2).  Included Other

18  Royalty Recipients who submit a valid Claim Form will also receive a prorated increase in their

19  U.S. and foreign royalty rates based on the percentage increase due to the applicable recording

20  artist.  *Id.,* ¶ 16(b)(5).

21      This prospective relief is similarly outstanding when compared to the Sony Music

22  Settlement.  There, artists with at least 28,500 total U.S. downloads on iTunes that filed a valid

23  _____

24  [7] This refers to the settlements reached in *Shropshire v. Sony Music Entm't*, No. 06-CV-3252-

25  GBD (S.D.N.Y.) and *Youngbloods v. BMG Music*, No. 07-CV-2394-GBD (S.D.N.Y.).  True and
    correct copies of the settlement agreements in these cases are attached as Exhibits A and B,

26  respectively, to the Warshaw Decl.

27  [8] *See* http://musicandcopyright.wordpress.com/2014/05/06/umg-and-wmg-see-gains-in-recorded-
    music-market-share-in-2013-while-sonyatv-dominates-music-publishing/#more-1166.

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   claim form received a 3 percentage point increase in their applicable royalty rate, with no cap or

2   floor (so many artists' future rates were likely still under 10% even with the increase).  *See* Exs. A

3   and B to Warshaw Decl.,  Artists with under 28,500 total U.S. downloads on iTunes could only

4   obtain prospective relief if they had at least $18,000 in royalty earnings within two consecutive

5   royalty accounting periods *and* notified Sony in writing of their right to prospective relief.  *Id*.

6   Finally, the Sony settlement provided <u>no prospective relief</u> for foreign sales.  *Id*.  The following

7   chart illustrates the material differences between the relief offered in the Sony settlement and here:

|  | Sony Settlement | WMG Settlement |
|---|---|---|
| Net Value of Fund Available for Past Relief | $5 million | $8,000,000[9] |
| Royalty Rate Increase for Prospective Relief (U.S.) | 3% for artists with at least 28,500 total U.S. downloads on iTunes | 5% for all artists up to a 14% cap |
| Royalty Rate Increase for Prospective Relief (Foreign) | None | 2.5% added to the U.S. Basic rate x the ratio of current U.S. Basic Rate to current Foreign Rate for all Artists |
| Royalty Rate Floor (minimum future royalty rate) | None | 10% |

On its own, and compared to the amount of relief provided in the Sony Music Settlement, the amount offered in settlement here strongly supports final approval.

### 4.   The Experience and Views of Counsel

When counsel recommending approval of a settlement is competent and experienced, their opinion should be given significant weight.  *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Weinberger v. Kendrick*, 698 F.2d 61, 75-76 (2d Cir. 1982) (affording great weight to opinion of competent and experienced counsel in favor of settlement approval).  In the instant case, Class Members were represented by counsel with extensive experience in complex class

---

[9] This amount is an estimate due to ongoing costs of administration and case management.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  action litigation, who have negotiated numerous class action settlements in various courts across

2  the country.  *See* Declarations of Class Counsel in support of Plaintiffs' Motion for Attorneys'

3  Fees, Litigation Costs, and Incentive Awards (Dkt. Nos. 103-1 – 103-8).  Class Counsel in this

4  case include attorneys highly experienced in music and entertainment litigation.  *Id.*  As

5  previously discussed, Class Counsel are also counsel of record in two other cases involving nearly

6  identical factual and legal issues, and their experience in those cases guided them here.

7          Class Counsel were satisfied with the Settlement Agreement only after conducting

8  extensive negotiations and thorough investigation into the factual and legal issues raised in this

9  case.  Warshaw Decl., ¶ 6.  They reviewed informal discovery and internal documentation

10  provided by WMG as part of the mediation process.  *Id.*, ¶ 7.  They also engaged a forensic

11  accounting firm to assist in confirmatory discovery of the information and materials produced by

12  WMG.  *Id.*; *see also* Declaration of Joseph Rust.  Even after the parties executed the settlement,

13  Class Counsel continued to work diligently on the case, monitoring the Settlement Administrator

14  and helping Class Members make claims to maximize the amount of the settlement.  Warshaw

15  Decl., ¶ 15.  Class Counsel worked tirelessly to achieve the best possible result for the Class and

16  believe that the Settlement Agreement was an excellent result.  Based on their experience and

17  expertise, Class Counsel view the Settlement Agreement very favorably.  *Id.* ¶ 9.

### 5.          The Reaction of Class Members to the Settlement

19          A court may appropriately infer that a class action settlement is fair, adequate, and

20  reasonable when few class members object to it or opt out.  *See Marshall v. Holiday Magic, Inc.*,

21  550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.  Here, over 1,000

22  Class Members[10] made claims under the settlement, while only 40 requested exclusion, (not all of

23  which exclusion requests are even from Class Members).  Eisert Decl., ¶ 7; and Hochberg Decl., ¶

24  19.  This is half the number that opted out of the Sony Music Settlement.  *See*, Warshaw Decl., ¶

---

[10] It is hard to translate claim forms into the number of people represented by those claim forms.
Some claim forms were filed by multiple individuals together while some were filed by
individuals.  Some claimants also filed multiple claim forms either by mistake or to cover different
contracts.  Hochberg Decl., ¶ 14.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   12 and Ex. C.  Hundreds of successful WMG artists that are household names thought the

2   settlement sufficiently fair, adequate and reasonable and they chose to participate.  Hochberg

3   Decl., ¶ 19.

4          The current class representatives, all prominent musicians in their own right support this

5   settlement[11].  Further, there was only one objection filed and that objection is suspect and invalid.

6   The only Class Members to object to the settlement were former class representatives Debra

7   Sledge, Joan Sledge, and Kim Sledge Allen (the "Sledge Three").[12]  The basis for their objection

8   was: (a) the settlement is not fair because it "undervalues" Class Members' claims; (b) Class

9   Counsel "wrongfully inflated Plaintiffs' expectations of what damages Plaintiffs would receive";

10  and (c) they adopted Ms. Lightfoot's already withdrawn objection.  (*See* Dkt. No. 107.)

11         The Sledge Three's objection has no basis in fact and should not be considered.  First, it is

12  entirely conclusory with no support for the Sledge Three's statements that the settlement

13  "undervalues" Class Members' claims or that Class Counsel "wrongfully inflated" their

14  expectations.  Without any evidence or even examples to support such claims, Class Counsel

15  cannot substantively respond to them.[13]  Second, with respect to the Sledge Three's expectations,

16  Class Counsel declare that they made no misrepresentations to the Sledge Three.  Warshaw Decl.,

17  ¶ 18.  In fact, during settlement negotiations, Class Counsel had multiple discussions and met in-

18  person with the Sledge Three's personal attorney, Mark Weiss, to explain the process and the

19  settlement.  *Id.,* ¶ 18.  The Sledge Three also retained additional independent counsel—who filed

20  their objection for them—with whom Class Counsel spoke on multiple occasions.  *Id.,* ¶ 19.

21  Third, the fact that the Sledge Three inserted a "catch-all" objection that simply latched onto an

22

---

23  [11] See Declarations of Kathy Sledge Lightfoot, Gary Wright and Ronee Blakley, filed concurrently
24  herewith.

25  [12] Class representative Kathy Sledge Lightfoot initially filed an objection, but subsequently
    withdrew it, declaring under penalty of perjury that the "statements contained in the objection
26  were based upon a misunderstanding on my part."  (Dkt. No. 106.)

27  [13] For example, what do the Sledge Three think is the proper value of Class Members' claims?
    What representations did Class Counsel make that inflated their expectations?

28

1    *already withdrawn* objection speaks volumes about their commitment and participation in this

2    case.  The Sledge Three's objection makes clear that they are more interested in their individual

3    damages than they ever were in representing the Class as a whole.

4          Moreover, the objection is now invalid.  The Sledge 3 failed to file a claim form to

5    accompany the claim form filed by Kathy Sledge Lightfoot.  They were given an opportunity to

6    cure that defect and chose not to do so.  Eisert Decl., ¶ 10 and Ex. C.  Under the terms of the

7    Settlement Agreement, they are now excluded from the class and do not have standing to file an

8    objection.  Settlement Agreement, ¶ 21(a).  *See Moore v. Verizon Communications Inc.*, 2013 WL

9    4610764 (N.D. Cal 2013) ("[i]t is well-settled that only class members may object to a class action

10   settlement."); *see also*, *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.D.C.2000).

11         In sum, this settlement was highly publicized and closely watched by the major players in

12   the industry—artists, music lawyers, music royalty accountants and others.  In the end, very few

13   Artists opted out and no one raised a legitimate objection.

14   **D.     THE NOTICE PLAN COMPLIED WITH APPLICABLE LEGAL
             STANDARDS**

15        **1.     Implementation of Notice**

16        Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class

17   members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

18   Notice to the class must be "the best notice that is practicable under the circumstances, including

19   individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.

20   23(c)(2)(B); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Mullane v. Central*

21   *Hanover Bank & Trust Co.*, 229 U.S. 306, 314 (1950).  This Court and other courts in this district

22   have found that notice by direct mail and publication easily satisfies these standards.  *See, e.g., In*

23   *re Optical Disk Drive Antitrust Litig.*, 2013 WL 2289977, at *2 (N.D. Cal. Mar. 22, 2013); *Burden*

24   *v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *6 (N.D. Cal. Mar. 21, 2013).

25        The Notice here included direct, individual notice to all Class Members who receive

26   royalty statements from a WMG U.S. Label.  WMG mailed the Notice and Claim Form to all such

27   individuals with their regular royalty statement for the royalty period ending December 31, 2013.

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

861239.3

19

12-CV-0559-RS

1    Hochberg Decl., ¶ 4.  Next, the parties engaged the Settlement Administrator to implement notice

2    by publication in several major magazines and newspapers.  The Publication Notice appeared once

3    in *Billboard* magazine (in one-quarter page size), once in *Rolling Stone* magazine (in one-half

4    page size), once in the *Chicago Tribune* (in one-sixth page size), twice in the *Los Angeles Times*

5    (in one-sixth page size), twice in the *New York Times* (in one-sixth page size), and twice in the

6    *Nashville Tennessean* (in 3 columns x 7 in/cm size).  Eisert Decl., ¶¶ 12-13.

7            To further implement the Notice, Rust Consulting issued a press release containing the

8    Publication Notice through major media outlets.  *Id.*, ¶ 14.  Rust Consulting also created and

9    maintained a Settlement Website, and WMG placed a link to the website on its homepage,

10   www.wmg.com.  *Id.*, ¶ 3(j) and Hochberg Decl., ¶ 5.  Pursuant to the Class Action Fairness Act,

11   28 U.S.C. § 1715, Rust Consulting sent notice to the proper entities within 10 days after the

12   Settlement Agreement was filed with the Court.  Eisert Decl., ¶ 4.

13           In addition to the above manners of notice, Class Counsel paid for and sent a postcard

14   reminder to Class Members before the claims deadline.  *Id.*, ¶ 15  This was not part of the original

15   Notice plan, but was voluntarily done by Class Counsel as an additional benefit to the Class.  *Id.*, ¶

16   15 and Warshaw Decl., ¶ 15.  These methods of notice complied with—and actually exceeded—

17   the Court's preliminary approval Order (Dkt. No. 101) and were unquestionably the best notice

18   practicable under the circumstances.

19                   **2.        Form and Content of Notice**

20           Regarding the form and content of notice, Rule 23(c)(2)(B) requires that:

21                   The notice must clearly and concisely state in plain, easily
                     understood language: (i) the nature of the action; (ii) the definition
22                   of the class certified; (iii) the class claims, issues, or defenses; (iv)
                     that a class member may enter an appearance through an attorney if
23                   the member so desires; (v) that the court will exclude from the class
                     any member who requests exclusion; (vi) the time and manner for
24                   requesting exclusion; and (vii) the binding effect of a class judgment
                     on members under Rule 23(c)(3).
25

26   The Court-approved Notice satisfied the above requirements.  It provided a clear and concise

27   explanation of the case, the Class definition, a summary of the lawsuit, the rights of Class

28   Members to retain an attorney, the rights and procedures for Class Members to exclude

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

themselves, and the binding effect of the settlement on the Class Members. *See* Settlement Agreement, Ex. 2.

**E.** **The Claims Process Is Fair, Necessary, and Reasonable**

**1.** **Claim Forms are a Common and Appropriate Feature of Class Action Settlements**

Courts routinely approve class action settlements that require class members to submit a claim form to obtain recovery under the settlement. *See, e.g., Shames v. Hertz Corp.,* 2012 WL 5392159 at 9 (S.D. Cal 2012) (courts "routinely approve claims made settlements"); *Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 537, 544 (W.D. Wash 2009); *Morales v. Stevco, Inc.,* 2012 WL 1790371 (E.D. Cal 2012); *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509 at *9 (S.D. Ohio 2014). When this occurs, class members who do not submit claim forms remain members of the class, and are bound by the judgment, but do not receive the settlement relief. *See id.*

Claim forms are deemed necessary, fair and appropriate in a number of circumstances, including use for class identification purposes and to streamline recovery calculations. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 277 (W.D. Tex. 2007) (use of claim form appropriate to identify class members); *Gascho* 2014 WL 1350509 at *9 (S.D. Ohio 2014) (same); *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560 593-594 (N.D. Ill. 2011) (use of claim form appropriate where there are detailed recovery calculations). Claim forms are also necessary, fair and appropriate where the costs of not using a claims process significantly outweigh the benefit to the class. *See, Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (without claim form identification of class members and implementation of settlement would require individualized review of company accounts and take thousands of hours). Courts also recognize that class action settlements, including the use of a claims process, are the result of arm's length negotiations. *See, Moore v. Verizon Communications Inc.*, 2013 WL 4610764 at *13 (N.D. Cal 2013) (acknowledging that settlement was not the "ideal" result the Federal Communications Commission supported but was the result of hard fought negotiations that ultimately included the use of the claims process); *Schulte*, 805 F.Supp.2d at 593 (rejecting the

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

objectors' arguments against the claims process and stating "perhaps most importantly, the claims process is a negotiated facet of this settlement").

Here, the use of a claim form serves the important purposes outlined by the courts for use of the claims-made process.  First, WMG cannot readily identify the specific names of the members of the Class without a time-consuming process.  In order to determine who is in the Class, WMG would have to go through the steps identified in Paragraph 7(a)-(e) of the Hochberg Declaration for most of its royalty recipients.  WMG sends out over 26,000 royalty statements every six months to U.S. artists that are not "on roster" or do not have alternative compensation arrangements.  Hochberg Decl., ¶ 15.  Without claim forms, WMG would have to pull all of the contracts relating to each of these statements to determine whether the recipients are signatories to Class Contracts.  *Id*.  Reviewing the 2,052 claim forms submitted and determining whether the claimant was in the Class took over 2,700 hours.  *Id*.  At this rate, it would take over 34,000 hours to accomplish this same work for the ~26,000 royalty recipients, or one person working full time without vacation for over 16 years.

Second, use of the claims process streamlines the recovery calculations.  Without the submittal of claim forms, WMG would have to calculate the past and future recovery for all of the Class members identified, which analysis alone—separate from the work of identifying valid Class members—would be a time-consuming endeavor.  To calculate the past relief, WMG would have to identify the Downloads/Mastertones revenue associated with Class Contracts (and excluding revenue not associated with Class Contracts) for thousands of artists and apply it to the past relief formula.  *Id*., ¶ 16.  Moreover, to calculate the future relief would require WMG analysts to determine the current U.S. and foreign rates for thousands of artists on an artist-by-artist basis, which rates often vary by album such that an individual band or artist can have four or five (or more) different rates for both U.S. and foreign sales, then accurately apply the appropriate rate increases under the Settlement Agreement and manually modify WMG's royalty system accordingly on an artist-by-artist and rate-by-rate basis.  *Id*., ¶ 17.  WMG anticipates that this will take many months to accomplish for the Authorized Claimants.  *Id*.  If WMG was required to do this work for a much larger set of artists, the time would increase dramatically.  *Id*.  When WMG

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  converted to a new U.S. royalty system in 2012, it took nine specialists working full time for over

2  a year to make this transition.  *Id.*  A large-scale royalty rate increase for specific artists based on

3  individualized rates and application of the particular settlement terms would take a like effort.  *Id.*

4          Third, the cost of not using a claims process far outweighs the benefit to the Class.  All this

5  work, time and resources would be expended to provide a past relief payout and royalty increase

6  to individuals who likely receive very little, if any, in download royalties such that they (and their

7  representatives) did not care enough about the issue to submit a very simple claim form.  Even

8  using a claim form process, over 200 of the claim forms that were submitted by Class Members

9  are associated with Downloads/Mastertones revenue for the Period (2009-2012) of less than

10  $10,000 total.  *Id.*, ¶ 18.  Those who did not bother to submit a claim form are likely to have such

11  minimal Download/Mastertone revenue, if any,[14] that the expenditure of resources would

12  outweigh the value to the Class.  Indeed, 500 artists generated over 90% of WMG's

13  Downloads/Mastertones revenue for the Period, most of them outside the Class definition.  *Id.*

14          Several federal courts have approved the use of claim forms in similar circumstances.  By

15  way of example only, in *Saccoccio*, the court held the claim form requirement to be fair,

16  reasonable and adequate when an individual inquiry into thousands of company files taking

17  thousands of hours would need to be performed to determine class membership and payout

18  without the use of the claim form.  *Saccoccio*, 297 F.R.D. at 693; *see also Casey v. Citibank, N.A.*,

19  2014 WL 4120599, *2-3 and fn. 3 (N.D.N.Y. 2014) (claims process appropriate where company

20  files did not track information necessary to readily identify class and it would take substantial

21  hours to manually review accounts and determine class membership and settlement payout).

22                    **2.       The Claim Form Was Simple and Easy To Submit**

23          The use of a claim form here is particularly appropriate because the claim form was simple

24  to fill out and easy to submit.  *See Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. at 544 (claim form

25  _____

26  [14] Many Artists that would be Class Members have little or no Download/Mastertone revenues;
27  their songs recorded decades ago are simply not remembered or purchased today.  Hochberg
    Decl., ¶ 18.

28

1  process appropriate particularly where claim form was easy to fill out and submit).  Notably, no

2  one has raised the content of the claim form or the existence of a claim form process as an issue

3  with the settlement.

4       Here, the claim form was sent directly to all potential class members with their royalty

5  statements, in which their royalty payments are enclosed, and was available online—the greatest

6  possible accessibility.  It only asked the Claimant to include their name, contact information and

7  connection to an artist.  *See* Warshaw Decl., Ex. E.  Claimants were further asked to make only

8  their best effort to fill out the form and no forms were excluded for failure to fill out the form

9  properly.  *Id*.  The claim form could be submitted by mail or by email directly to the Settlement

10  Administrator.  *Id*.  Indeed, the claim forms were so easy to submit that hundreds of artists without

11  a connection to the Class filed claims.  Hochberg Decl., ¶ 9.

12       **F.     Claim Forms are Equally Valid For Forward-Looking Relief**

13       Where a claim form is validly utilized, the settlement benefits—past and forward-

14  looking—properly flow to the claimants and the entire class grants a release.  While there are very

15  few settlements where part of the settlement involved future benefits to individual claimants, for

16  those few settlements that we could located that address individualized future benefits and the use

17  of claim forms—each involved a class-wide release and each received final approval.

18       For example in *Turner v. General Electric Company*, the court held that a settlement was

19  fair, reasonable and adequate when it provided, only to claimants, an extended one-year

20  refrigerator warranty and the ability to obtain, in the future when certain criteria were met,

21  replacement refrigerators (or reimbursement of repair/replacement costs). 2006 WL 2620275 at

22  *5-7 (M.D. Fla. Sept. 13, 2006).  If a class member did not submit a claim form, that class

23  member could not obtain the new refrigerator even if the circumstances giving rise to the new

24  refrigerator developed, even though the class member provided a full release.  Likewise, a class

25  member that did not file a claim did not get the benefit of the extended warranty even though the

26  class member had released all future claims.  The court approved the settlement—determining that

27  the claim form was reasonable and warranted— for both past and prospective relief.

28       Unlike here, in *Turner*, objectors specifically raised issues about the claim form

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   requirement, asserting that it "only serve[d] to cut off the rights" of the class members to the

2   settlement benefits. *Id.* The court rejected this objection stating that the claim form "is clear and

3   simple, and is a reasonable administrative requirement. While the requirement could have been

4   negotiated away, the nature of arms-length bargaining results in some provisions which are not as

5   favorable as conceivably possible for each side." *Id.*

6       Likewise, in *DeHoyos v. Allstate Corp.*, the court issued final approval for a settlement that

7   required class members to complete a claim form in order to receive monetary payments for past

8   relief and to be eligible for the re-pricing of their insurance policy for the future using a new

9   insurance scoring algorithm to determine the premium. 240 F.R.D. 269, 313-314 (W.D. Tex.

10  2007). Once again, the court approved the settlement—determining that the claim form was

11  reasonable and warranted—for past and prospective relief and all class members granted a release.

12  Id.

13      There is also the Sony Music Settlement discussed above involving the same claims

14  against a different record company. That settlement involved a more onerous claim submission

15  process, requiring submittal of the claimant's contracts, in order to be eligible for past relief and

16  future royalty increases. Warshaw Decl., Exs. A and B. All class members granted a full release

17  for past and prospective claims. *Id.*, Ex. A, §§1(q) and 2; *see also,* Ex. B, §§1(r) and 2. The court

18  determined the Sony Music Settlement was fair, reasonable and adequate, including the use of a

19  claims process for future relief. Id., Ex. C.

20      Fundamentally, the courts do not distinguish between past and future relief. The real

21  question is whether the claim form is warranted. If the use of the claim form is reasonable, as

22  discussed above, then only claimants are entitled to the settlement relief—past and future—and

23  defendants are entitled to a class-wide release under the law.

24  **IV.   THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23**

25      In its preliminary approval Order, this Court certified the Settlement Class as: "All persons

26  and entities (and their successors-in-interest, assigns and heirs) that are parties to a Royalty Rate

27  Contract, dated on or prior to December 31, 2001, with a WMG U.S. Label." (Dkt. No. 101.) In

28  so doing, the Court made a preliminary determination that the Settlement Class satisfied the

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1 | requirements of Rule 23. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004). Plaintiffs

2 | now submit that the Settlement Class may finally be certified for settlement purposes, as it

3 | continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule

4 | 23(b).

5 | **V.      CONCLUSION**

6 |        For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final

7 | approval to the Settlement Agreement.

8 |

9 | DATED: November 26, 2014                    */s/ Daniel L. Warshaw*

10 |                                              Clifford H. Pearson (Bar No. 108523)
11 |                                              Daniel L. Warshaw (Bar No. 185365)
                                                 Alexander R. Safyan (Bar No. 277856)
12 |                                              **PEARSON, SIMON & WARSHAW, LLP**
                                                 15165 Ventura Boulevard, Suite 400
13 |                                              Sherman Oaks, CA 91403
                                                 Telephone: (818) 788 8300
14 |                                              Facsimile: (818) 788 8104
                                                 cpearson@pswlaw.com
15 |                                              dwarshaw@pswlaw.com
                                                 asafyan@pswlaw.com
16 |

17 |                                              Bruce L. Simon (Bar No. 96241)
                                                 **PEARSON, SIMON & WARSHAW, LLP**
18 |                                              44 Montgomery Street, Suite 2450
19 |                                              San Francisco, California 94104
                                                 Telephone: (415) 433-9000
20 |                                              Facsimile: (415) 433-9008
                                                 bsimon@pswlaw.com
21 |

22 |                                              Michael D. Hausfeld (pro hac vice)
                                                 James J. Pizzirusso (pro hac vice)
23 |                                              Nathaniel D. Giddings (pro hac vice)
                                                 **HAUSFELD LLP**
24 |                                              1700 K Street, NW Suite 650
                                                 Washington, D.C. 20006
25 |                                              Telephone: (202) 540-7200
26 |                                              Facsimile: (202) 540-7201
                                                 mhausfeld@hausfledllp.com
27 |                                              jpizzirusso@hausfeldllp.com
                                                 ngiddings@hausfeldllp.com
28 |

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

Michael P. Lehmann (Bar No. 77152)
Bruce J. Wecker (Bar No. 78530)
Arthur N. Bailey, Jr. (Bar No. 248460)
**HAUSFELD LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
mlehmann@hausfeldllp.com
bwecker@hausfeldllp.com
abailey@hausfeldllp.com

Paul R. Kiesel (Bar No. 119854)
Jeffrey A. Koncius (Bar No. 189803)
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
kiesel@kbla.com
koncius@kbla.com

David M. Given (State Bar No. 142375)
Nicholas A. Carlin (State Bar No. 112532)
Alexander H. Tuzin (State Bar No. 267760)
**PHILLIPS, ERLEWINE & GIVEN LLP**
50 California Street, 35th Floor
San Francisco, CA 94111
Tel: 415-398-0900
Fax: 415-398-0911
dmg@phillaw.com
nac@phillaw.com
aht@phillaw.com

Michael W. Sobol (Cal. Bar No. 194857)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
msobol@lchb.com

Attorneys for Plaintiffs and the Class

861239.3

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT